IN RE IMPROVEMENT OF COUNTY DITCH NO. 31 AND
JUDICIAL DITCH NO. 13, FARIBAULT COUNTY.
WALTER OELKE AND ANOTHER v. COUNTY
OF FARIBAULT.[1]

May 20, 1955.

No. 36,186.

Putnam & Spencer and Seifert, Johnson & Hand, for appellants.
Morse & Frundt and Smith, McLean & Peterson, for respondent.

[1]Reported in 70 N. W. (2d) 853.

KNUTSON, JUSTICE.

This is an appeal from an order of the trial court ordering the improvement of an outlet to certain drainage systems hereinafter described.

County ditch No. 31 in Faribault county was established in July 1915. It consists of a main open ditch about nine miles in length with a few tile branches. It empties into Coon Creek, which flows generally in a northerly direction and empties in turn into Blue Earth River.

Judicial ditch No. 13, lying wholly within Faribault county, was established in July 1916. It is a rather long ditch, consisting of a main open ditch about 18 miles in length with two open ditch branches aggregating 11 miles in length and a number of tile branches. It empties into county ditch No. 31 about 3,700 feet from where that ditch enters Coon Creek. As a consequence, both drainage systems use the same channel for the last 3,700 feet.

As the years passed after the construction of these two drainage systems, a large number of private drains and seven public drainage systems were constructed so as to empty into one or the other of these two ditch systems. The ditches have not been kept in repair, and the flowage of water in both is substantially retarded by the growth of brush, weeds, and trees and the accumulation of silt in the ditches.

Early in 1946 a petition, signed by 16 freeholders whose lands are at or near that part of county ditch No. 31 used as a common outlet into Coon Creek, was filed under and pursuant to L. 1945, c. 33, § 1 (M. S. A. 1945, § 113.19), praying for the improvement of the outlet of these ditches. After reciting the facts relating to the establishment of judicial ditch No. 13 and county ditch No. 31, the pertinent portion of the petition reads as follows:

"That by reason of the accumulated waters from said two drainage systems emptying into said Coon Creek through the outlets thereof, said waters so emptying into said Coon Creek, at and near said outlets and for a considerable distance downstream therefrom, are caused to overflow and inundate a large area of the adjoining land; and it is believed by your petitioners that it is necessary to construct

off-take or outlet ditches so as to create additional outlets for the waters from said drainage systems in order to relieve said overflow conditions, and to deepen and widen said Coon Creek which forms the outlets for said drainage systems so far as may be necessary to take care of the waters coming into the same."

The first hearing on this petition was held on April 8, 1946, before the then judge of the district court of the seventeenth judicial district, the Honorable Julius E. Haycraft. Judge Haycraft issued his order, which bears no date but which was filed on April 16, 1946, granting the petition. In his order Judge Haycraft stated among other things:

"That the petitioners constitute more than twenty-five per cent of the freeholders whose property is affected by the overflow of waters referred to in said petition, and that the Court has jurisdiction of these proceedings."

He designated the proceeding as judicial ditch proceedings No. 24 and appointed an engineer to make the necessary surveys and plans. The engineer filed his report on June 2, 1947, in which he estimated that the cost of the proposed improvement, which would consist largely of deepening and widening Coon Creek, would be $24,038.39. Viewers thereafter were appointed to assess damages and benefits. They estimated the total benefits to be $33,327.52 and the cost, plus damages, at $25,333.39. On July 30, 1947, Judge Haycraft resubmitted the engineer's report to the engineer and the viewers' report to the viewers for the reason that it appeared to him probable that the plan could be improved further by extending the proposed work farther down Coon Creek, and he was of the opinion that the viewers had assessed benefits on the wrong theory. Several adjourned hearings followed.

On August 4, 1948, Judge Haycraft had retired and the Honorable Martin A. Nelson took over, sitting in the place of Judge Haycraft's successor. who had disqualified himself. At the first hearing before Judge Nelson on September 7, 1948, objectors to the proposed improvement challenged the sufficiency of the petition. Judge Nelson then held that the objectors were foreclosed from raising the ques-

tion as to the sufficiency of the petition by Judge Haycraft's original order. Several hearings followed at which it appeared probable that the proposed improvement of itself would not be sufficient to alleviate the flooding of petitioners' lands. On August 25, 1952, Judge Nelson appointed Charles H. Young, a consulting engineer, of Muscatine, Iowa, as the court's advisor or moderator. After making an investigation, he reported to the court that the proposed improvement, without more, would not be worth while.

It would unnecessarily lengthen this opinion to set forth in detail all the hearings and evidence adduced in respect to the value of the original proposed improvement. It is sufficient to say that the end result was that the court's moderator recommended that the improvement of Coon Creek be enlarged considerably from the original plan and, in addition thereto, that ditches Nos. 31 and 13 be improved substantially for a considerable distance upstream from the confluence thereof. The project engineer thereafter adopted substantially the recommendations made by Mr. Young and made a new report as of March 1953. His recommendations may be summarized briefly as follows: (1) That Coon Creek, commencing at the upstream end at the north line of section 10, Elmore township, be straightened and enlarged downstream a distance of 12,300 feet; (2) that the brush jam, dead falls, and tree slides in Coon Creek be removed downstream to trunk highway No. 169 at the east line of section 29, Blue Earth City township; (3) that silt in the creek channel for a distance of 1,000 feet below the outlet be removed; (4) that judicial ditch No. 13 be enlarged and deepened upstream from its confluence with county ditch No. 31 for a distance of 11,100 feet; (5) that county ditch No. 31 be enlarged and deepened upstream from the common outlet into Coon Creek a distance of 3,700 feet to the junction of judicial ditch No. 13 and county ditch No. 31 and that it be deepened and enlarged from that point upstream an additional 18,100 feet along the main ditch of county ditch No. 31. In addition, the engineer reported that ditches Nos. 13 and 31 were in need of repair and recommended that such repairs be made, but that was to be no part of this proceeding.

The viewers' fourth report, in which benefits are found to be $115,405.40 and total estimated costs, including damages awarded, are found to amount to $83,653.33, was thereupon filed. The court thereupon issued its order providing for such improvement. This appeal is from the court's order.

Three questions are presented for our determination:

(1) May the objectors, subsequent to the original order granting the petition, challenge the sufficiency of the petition?

(2) May ditches Nos. 31 and 13 above the confluence of the ditches be improved and enlarged in a proceeding brought under L. 1945, c. 33?

(3) Did the viewers properly assess the cost of the proposed improvement?

1-2. At the outset it is apparent that the improvement finally approved went far beyond that contemplated by the original petition. In that respect Mr. Young testified as follows:

"Q. And you have further stated, I believe, that the improvement here contemplated in this work will bear no relation to that originally contemplated, where there was a dropoff and extension only at the lower end?

"A. That is correct.

"Q. And the effect of this proposed improvement will be materially different than that of the originally proposed outlet extension?

"A. Yes, sir."

Many of the rules applicable to a determination of jurisdiction over a drainage proceeding are well stated in In re Judicial Ditch No. 12, 227 Minn. 482, 492, 36 N. W. (2d) 336, 341, certiorari denied, G. N. Ry. Co. v. Lehman, 337 U. S. 938, 69 S. Ct. 1514, 93 L. ed. 1743, where we said:

"* * * a ditch proceeding is one in rem and *in invitum*. It is purely statutory, and its provisions must be strictly complied with. Jurisdiction of the district court over the parties and the subject matter in a case entertained by it will be presumed unless want of jurisdiction affirmatively appears on the face of the record or is

shown by extrinsic evidence in a direct attack on the judgment or order. [Cases cited.] A statutory petition is a jurisdictional prerequisite to the authority of the court or county board to proceed in the matter of establishing a ditch. Legislation has given to the order establishing a public ditch all the final and binding force of a judgment in rem. [Cases cited.] The statute makes the order establishing the ditch prima facie evidence of regularity of all proceedings prior to the making of such order. The final order in a ditch proceeding carries with it the usual presumption of regularity and propriety of official action, and is presumptive evidence of the validity of each step taken. This presumption continues until the contrary affirmatively is shown or clearly appears from the record as made."

In that case the lack of jurisdiction based on the insufficiency of the original petition was not raised until the case came before us for review. While we held that the record there did not overcome the presumption of validity, we did consider the question even when raised for the first time on appeal. The question now before us is not whether the presumption of validity has been overcome but whether the objectors should be permitted to introduce evidence to overcome it subsequent to the first order of Judge Haycraft.

The rule applicable generally to courts, stated in 21 C. J. S., Courts, § 112, p. 173, as follows:

"*Effect of prior rulings.* The question of jurisdiction of the subject matter is not closed by the fact that there have been in the same case prior rulings of the same judge, or of another judge, sustaining the jurisdiction."

applies equally as well to drainage proceedings as to any other proceeding except insofar as the statutes preclude such inquiry.

While the statute here involved does not expressly state whether the granting of the original petition forecloses a later determination of the jurisdictional question now before us, the general plan of our drainage laws is to leave most matters open for final determination until the final order of the court. L. 1945, c. 33, § 2, reads:

"Upon such hearing [on the petition], the court shall proceed to hear all testimony offered in relation to the matter and, if it be made to appear that the allegations of the petition are true and that the same should be granted, he shall make an order granting the petition and giving said drainage proceedings a title and number by which it shall, in all subsequent proceedings, be designated, and appointing a competent civil engineer to make such additional surveys, and such changes and modifications of the surveys, reports, plans and estimates theretofore made as may be necessary, and fixing the time within which the modified and amended report of the engineer shall be filed in the office of the clerk of the district court of the county.

"Upon the filing of the modified and amended report of the engineer, if any, the judge shall appoint three viewers to assess the benefits and damages in this drainage proceeding in accordance with the provisions of the drainage laws of this state, and thereafter the proceedings shall be continued and carried to final determination under the general drainage laws of this state as though originally commenced as one proceeding before the judge."

With respect to the finality of the court's order on a preliminary hearing of a petition for the establishment of a ditch, M. S. A. 1945, § 106.07, in effect at the time this proceeding was commenced, contained the following provision:

"The findings required in this section [that is, findings with respect to the sufficiency of the original petition] shall not be construed as conclusive except only to determine the nature and extent of the plan and the necessity for ordering a permanent survey; all questions relative to the practicability and necessity of the proposed improvement shall be subject to further investigation and consideration at the final hearing if the permanent survey discloses facts not discovered in making the preliminary survey."

When our drainage laws were recodified by L. 1947, c. 143, § 10, subd. 6, somewhat extended the effect of the court's findings. That section was codified as M. S. A. 106.101, subd. 6, and reads:

"The findings hereinbefore required shall be construed as conclusive only *as to the sufficiency of the petition,* the nature and extent of the proposed plan and the need of a permanent survey, and *only as to the persons or parties shown by the engineer's preliminary report as likely to be affected by the improvement.* All questions relative to the practicability and necessity of the proposed drain or improvement shall be subject to further investigation and consideration at the final hearing." (Italics supplied.)

It is apparent from this provision that, had it been in existence or applicable to the proceeding now before us, the original order of Judge Haycraft would have been conclusive only as against the persons or parties shown by the engineer's preliminary report as likely to be affected by the improvement. While this section is not applicable here, it does evidence the legislative intent to permit questions of the kind now before us to be raised at any time prior to the final hearing by anyone who has not already been heard thereon. We have no record of the proceedings before Judge Haycraft so we cannot say that these objectors have already been heard on this question.

It is apparent that the proper application of this legal principle becomes doubly important in a proceeding such as we have here. The proceeding was commenced under a petition contemplating the improvement of an outlet at an estimated cost of about $25,000. It finally culminated in an order providing for improvements which would cost in the neighborhood of $83,000. It is conceivable that many landowners who may have examined the original petition or who attended the early hearings might well have assumed that they would not be affected by the proceeding at all. As the scope of the proceeding was extended, their position may have been considerably altered. They should not be precluded from asserting their objections to the court's jurisdiction at such time as it became apparent that they would be affected by it. We therefore hold that the trial court's determination that the petition was sufficient at the preliminary hearing on the petition did not preclude the court from considering the sufficiency of the petition at any time up to the issuance of the final order.

We need not determine here whether the petition was or was not sufficient. After first denying the objectors the right to question the sufficiency of the petition, the court did permit the objectors to introduce evidence showing that a large number of landowners upstream from the confluence of the ditches would be affected by overflow. On the basis of such evidence, objectors now urge us to hold that the court did not have jurisdiction.

In its final order the trial court, as one of its findings, stated:

"That the petition herein is sufficient, as required by law, as heretofore found and determined by the above named court, the Honorable Julius E. Haycraft, Judge; that this Court has jurisdiction of said proceeding and of all lands and properties described in the engineer's and viewers' said reports and of all persons and corporations having any interest therein."

It seems apparent from this finding that the court was of the opinion that it was precluded from making an independent determination of the jurisdictional question by virtue of Judge Haycraft's previous order; hence there has been no determination based on the record before us by the trial court. We believe also that all parties may have misapplied the law in determining what landowners are required to sign the petition. The statute under consideration requires a petition signed by 25 percent of the freeholders "whose property is affected by such overflow." We are here dealing with an overflow caused by the inadequacy of an outlet, whether it be an existing ditch into which other drainage systems may empty or a natural creek, draw, watercourse, or body of water. It follows that the sufficiency of the petition must be tested in the light of the condition which the proceeding is intended to alleviate. Consequently, the number of petitioners required to give the court jurisdiction under this statute is 25 percent of the freeholders whose lands are affected by an overflow which is due to the inadequacy of the outlet, not an overflow due to the inadequacy of the ditches or due to a failure to keep the ditches in proper repair. We believe that the questions submitted to the witness in this case were not confined within the proper limits and that the witness may well have under-

stood the question to be whether the land upstream was affected by an overflow without specifically limiting it to an overflow caused by the inadequacy of the outlet. For that reason and for the reason that the trial court apparently has made no determination of the question independent of that originally made by Judge Haycraft, we feel that we should not pass upon the sufficiency of the petition in the first instance.

■ The more important question is whether judicial ditch No. 13 may be enlarged and improved some two miles and county ditch No. 31 some three miles upstream from the confluence of the two ditches. In determining this question there are some well-established rules of law pertaining to drainage proceedings which must be kept in mind.

We have often held that, when a ditch system is once established, owners of land who have recovered damages or who have been assessed for benefits for its construction have a vested property right in the maintenance of the ditch in the same condition as it originally was established, which right cannot be divested without due process of law.[2] Under our present law there are five distinct types of drainage proceedings, one of which contemplates the improvement of an outlet. In re Petition for Repair of County Ditch No. 1, 237 Minn. 358, 55 N. W. (2d) 308.

Each proceeding has its own statutory prerequisites for obtaining jurisdiction, and, for obvious reasons, one proceeding may not be ordered under a petition for another type of work. Thus, an improvement or enlargement which contemplates a change from the original ditch may not be done under a petition for repair. Johnson v. County of Steele, 240 Minn. 154, 60 N. W. (2d) 32. Similarly, an improvement or enlargement of the original ditch may not be done under a petition for the improvement of an outlet.

Prior to the enactment of L. 1945, c. 33, our drainage code contained provisions for the improvement of an outlet quite similar to

---

[2]Lupkes v. Town of Clifton, 157 Minn. 493, 196 N. W. 666; In re Petition of Jacobson re County Ditch No. 24, 234 Minn. 296, 48 N. W. (2d) 441; In re Petition for County Ditch No. 53, 238 Minn. 392, 57 N. W. (2d) 158; In re Petition for County Ditch No. 15, 238 Minn. 15, 55 N. W. (2d) 305.

the above law except that it required a consolidation of all the ditches emptying into the common outlet into one drainage system. M. S. A. 1941, § 106.77, *et seq.*[3] Under the similar prior law we held that the court could not order the removal of defects in existing drainage systems under a petition for consolidation. State ex rel. Town of Dovray v. Nelson, 145 Minn. 31, 176 N. W. 181.

In State ex rel. Low v. District Court, 159 Minn. 428, 433, 199 N. W. 883, 884, which was a proceeding brought under the old consolidation statute, we said:

"The petition shows a cause of procedure under the consolidation statute. It was sufficiently signed. The repair statute, section 5552, as amended by section 6 of chapter 300, p. 434, Laws of 1915, has no application to a proceeding under such a petition. That statute was intended, as it clearly provides, to furnish a means of repairing, cleaning, enlarging or extending a drainage system to the end that it might serve its original purpose, while the statute here under consideration has to do only with the consolidation of different systems in the same drainage area for the improvement of the common drainage outlet. Under it there can be no improvement nor enlargement of any system other than is necessary to accomplish the proper outlet for such systems through such watercourse. * * *

"* * * It is not the purpose of the consolidation statute to provide for improvements or extensions. Such a scheme might work untold injustice. For instance, suppose, as in the instant proceeding, that after the merger was carried into effect, a string of 1,000 tile should break in Judicial Ditch No. 16 which is some eight miles below No. 53, should the latter system be assessed for the repair of such tile, and if so upon what basis?"

Respondent argues that it is necessary, in order to provide an adequate outlet for the ditches involved, that the ditches be improved

---

[3]When our drainage laws were recodified by L. 1947, c. 143, M. S. A. 106.511 replaced both the former § 106.77 and L. 1945, c. 33. The provision for consolidation theretofore contained in § 106.77 was dropped because consolidation was deemed to be impractical. See, Report of Interim Commission to Revise and Codify Drainage and Water Resources Laws, 1947, note to § 51.

upstream as well as downstream from the confluence of the two ditches. However, we need only read the statute involved to see that this cannot be done under this petition. The title of L. 1945, c. 33, as far as material here, reads:

"An act authorizing the county boards of the several counties, and the district courts of the several judicial districts in this state, to deepen, widen and improve existing ditches *forming the outlet for waters from ditches connected therewith*, to establish and construct off-take ditches or additional outlets, providing for the maintenance of the same and providing for the reimbursement of owners of land damaged thereby, and the determination. of benefits and damages, and for the collection of cost and expenses * * *." (Italics supplied.)

The body of the act itself, we believe, clearly shows that it contemplates only the improvement of the outlet as such. Insofar as it is material, it reads (§ 1):

"In any case where one or more ditches or drainage systems, whether open or tiled, whether public or private, shall have been, or are being, or may hereafter be, constructed, or for the construction of which proceedings have been, or may hereafter be, initiated, *the waters from which* do, or it is contemplated shall, *empty into any existing ditch or any creek, draw, watercourse, or body of water,* whether meandered or not, and it is found or believed that the operation, performance, or additional ditch construction or drainage improvement shall cause, or is likely to cause, *by reason of accumulated waters,* the overflow of the waters of the drainage ditch, creek, draw, watercourse, or body of water *into and through which said waters flow,* and the inundation of the adjoining land, and it is believed that it is necessary to construct off-take or outlet ditches so as to create additional outlets for such waters in order to relieve said overflow conditions, or if it is believed that the deepening and widening of such existing drainage ditch, creek, draw or watercourse, *which forms the outlet for other drainage systems,* is necessary to take care of the waters coming into the same, then, and in that event, upon the filing of a petition * * *." (Italics supplied.)

The ditches upstream from the confluence of these two ditches cannot be held to be a common outlet. Respondent argues that other ditches empty into ditches Nos. 13 and 31 upstream and, therefore, that these ditches constitute an outlet for other ditches. While that might be true, this petition is not based on such contention. The petition makes no reference to other ditches, public or private, which may empty into ditches Nos. 13 and 31, causing them to overflow. If the contention of respondent is sound, then both these ditches could be improved under this petition the entire distance to their source, or at least upstream as far as any other ditch emptying into it had any effect in causing it to overflow. One difficulty with this contention is that, if we proceed on that theory, then clearly the petition is insufficient since any landowner whose land is affected by such overflow would have to be counted in determining whether there are sufficient signers on the petition. The number of signers required by this statutory proceeding is limited to a percentage of those affected by the overflow caused by an insufficient outlet. Conversely, the improvement may extend only as far as it is necessary to provide an adequate outlet and prevent such overflow, caused by the accumulation of waters from any ditch flowing into another ditch or a watercourse, creek, or body of water.

It may well be that the improvement of ditches Nos. 31 and 13 is necessary in order to provide complete drainage relief to the petitioners. If so, our statutes have ample provisions for obtaining such relief if and when a proper petition for improvement is signed by the requisite number of landowners under the appropriate statute. However, the rights of the parties, as well as their obligations to pay for benefits for improving a common outlet and for improving their respective ditches upstream from the confluence thereof, are entirely separate and distinct. It is conceivable that, below the confluence of the ditches, landowners served by both ditches will receive benefits from the improvement of that outlet. When it comes to the improvement of the ditches upstream, a different problem arises both with respect to assessing benefits and awarding damages and keeping the ditches in repair. When the time comes for repairing the respective ditches, the problem of assessing the cost of such repairs will arise.

Under our present repair statute, § 106.471, the cost of repairs are assessed pro rata against the lands theretofore determined to have participated in benefits. Under our improvement statute, § 106.501, there must be a new determination of damages and benefits, and subsequent assessments for repairs thereafter are based on the benefits so determined.

Under L. 1945, c. 33, § 2, the outlet which is improved becomes a new ditch, which thereafter is maintained under § 3 of the act, which reads:

"Said off-take ditches or additional outlets and outlet ditches shall thereafter be maintained by the county or counties in which said drainage system is located and the cost of maintenance shall be assessed against all lands benefited thereby."

If ditches Nos. 31 and 13 may be improved as here ordered, the improved portions necessarily would become part of judicial ditch No. 24 and thereafter would have to be maintained under the above-quoted § 3. To so hold would lead to nothing but confusion. We therefore hold that L. 1945, c. 33, contemplates only the improvement of an outlet from the point where one or more ditches or drainage systems empty into an existing ditch or a creek, draw, watercourse, or body of water. It follows that, under the petition now before us, the court did not have authority to order the improvement of ditches Nos. 31 or 13 above the confluence of the two ditches except to the extent that it might be necessary in order to provide an adequate outlet. If the ditches above the common outlet are to be improved, it will have to be done under a petition properly signed as required by the improvement section of our drainage code or under a petition, substantiated by proof, showing that the overflow is caused by other ditches emptying into ditches Nos. 13 or 31 or both.

■ The final question presented for our determination is whether the method used by the viewers in assessing benefits can be justified. In view of our determination of the main issue involved in this case, it might not be necessary for us to pass upon this question, but, in view of the fact that some further action may be taken by the trial court in this proceeding, we deem it desirable to point out that

L. 1945, c. 33, requires an independent determination of damages and benefits arising from the authorized improvement of the outlet. The record before us indicates that the viewers made a classification, and to some extent spread the cost of the improvement, on the basis of the original assessment for benefits used in establishing the ditches. While there may be no objection to referring to the original assessment for benefits, along with other evidence of benefits, the benefits from improving the common outlet, unlike the cost of repairs of the ditch which are spread pro rata on the basis of benefits theretofore determined, may not be based pro rata on such original assessment. Costs for improving an outlet, the same as costs for improving a ditch, must be assessed against the land benefited based upon an independent determination of such benefits. It is entirely conceivable that the lands lying in the upper reaches of the drainage systems will not benefit from an improvement of an outlet in the same proportion as they benefited from the construction of the ditch. The law contemplates and requires an independent and original assessment of benefits based on the actual benefit of the contemplated improvement to the land to be assessed. Beyond so stating, we need not determine the validity of the assessments. If any further action is to be taken in this proceeding, it obviously will be necessary to reassess the benefits, and, in so doing, the proper method should be followed.

Inasmuch as the trial court has not determined whether the petition, under the rules now stated, is sufficient nor whether the improvement of the outlet should be undertaken without including an improvement of the ditches above the confluence thereof, the case will be remanded to the trial court in order that it may take such further action as appears advisable not inconsistent with this opinion.

Reversed.

Mr. Justice Nelson took no part in the consideration or decision of this case.