IN RE PETITION FOR IMPROVEMENT OF JUDICIAL
DITCH NO. 53, BLUE EARTH AND BROWN COUNTIES.
FLOYD EDWARDS AND OTHERS v. JOHN MASSETT
AND OTHERS.

164 N. W. (2d) 382.

January 24, 1969—No. 41191.

*Edward A. Nierengarten,* for appellants.

*C. A. (Gus) Johnson I* and *Johnson, Johnson & Anderson,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Frank T. Gallagher, JJ.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the district court denying a petition for the improvement of a watercourse known as Morgan Creek.

Petitioners are landowners whose property abuts Morgan Creek, a natural watercourse having its origin in Brown County and running about 5 miles in a generally northeasterly direction, primarily through Blue Earth County, to the Minnesota River. The creek has a very steep fall of 187½ feet and forms the outlet for numerous drainage ditches. It is claimed that it is of insufficient size and capacity to carry the water from all the ditches and as a result the increase in flow causes inundation of petitioners' land and erosion along the banks. Petitioners therefore brought this action under Minn. St. 106.511 of the Drainage Code, providing for improvement of outlets. They ask that Morgan Creek be deepened, enlarged, and extended.

On June 18, 1965, an engineer was appointed to make a preliminary survey and report pursuant to § 106.071. In his report, filed June 3, 1966, he presented two alternatives whereby Morgan Creek could be deepened, straightened, riprapped, and contained, and water-control structures built.

At the preliminary hearing on June 27, 1966, objectors to the petition appeared and challenged the jurisdiction of the court "[u]pon all the files, records, and proceedings in this matter." The court noted the objection but did not rule on it at that time. Evidence was offered in support of the petition in the form of testimony by Floyd Edwards, one of the petitioners, and by the engineer. Edwards' testimony was confined primarily to the effect of the heavy flow of water on his property, although he did mention some damage to bridges and roadways and to the property of one of his neighbors. The engineer stated that the improvement as requested in the petition would cost approximately $38,962.25, but that due to the steep fall of the creek such improvement would not prevent continued excessive erosion.

The alternate plan recommended in the engineer's report involved re-channeling the creek and constructing a series of control structures designed to reduce the degree of fall. This plan would halt erosion. Its estimated cost was $134,692. According to the engineer, this latter plan

would be the better one to proceed with for a complete solution to the problems set forth in the petition. He testified as follows:

"Q. In your opinion, would this [the plan suggested in the petition] correct the situation as to the overflow, inundation and erosion we now have?

"A. It would correct, I believe, the overflow around these two sets of buildings on the Edwards' and Evans' properties but it would not stop erosion. You would still have the total amount of fall."

On October 9, 1967, prior to entering its order, the trial court toured the area in question at the request of petitioners. In the memorandum accompanying its order the court commented on the results of the tour as follows:

"* * * That there is damage to lands appurtenant to Morgan Creek cannot be questioned. Efforts of property owners in placing auto bodies, old machinery, log and boulders on their lands to help prevent erosion give mute testimony to this fact. Bridges and roads as well have been repaired and replaced due to flooding and erosion."

Despite this, the order, entered November 8, 1967, denied the petition. According to its memorandum the trial court apparently felt that since the engineer believed the improvement as requested would not prevent excessive erosion it should not be authorized. The court concluded that inclusion of water-control structures as contemplated by the alternate plan "would seem to bring the cost to an excessive, and almost prohibitive, sum." The court did not expressly rule on the question of its jurisdiction. However, in ruling on the merits of the petition it necessarily concluded that it had the requisite jurisdiction.

Petitioners appeal from the order denying their petition. It is their position that upstream drainage ditches in Blue Earth and Brown Counties are operating under a delegated power of eminent domain; that there has been a taking or damaging of petitioners' property for a public use within the meaning of the United States and Minnesota Constitutions and of the drainage laws; that the rule that landowners may dispose of surface waters as best they can so long as they use their own lands so as not to unnecessarily or unreasonably injure their neighbors does not

apply; that petitioners are entitled to relief and an adequate remedy at law for damages they now have and for avoidance of future damages; and that therefore the trial court erred in denying their petition.

█ As we have pointed out in the past, the jurisdiction of the district court in ditch proceedings will be presumed unless the lack of such jurisdiction affirmatively appears on the face of the record or is shown by extrinsic evidence in a direct attack on the judgment or order. In re Judicial Ditch No. 12, 227 Minn. 482, 492, 36 N. W. (2d) 336, 341, certiorari denied sub nom. G. N. Ry. Co. v. Lehman, 337 U. S. 938, 69 S. Ct. 1514, 93 L. ed. 1743; In re County Ditch No. 31 & Judicial Ditch No. 13, 244 Minn. 543, 547, 70 N. W. (2d) 853, 857. We have examined the grounds on which objectors claim lack of jurisdiction and conclude that they are answered in the Drainage Code itself and we therefore deem it unnecessary to discuss them in detail here.

Section 106.511 is one of the remedial provisions of the Drainage Code. In re Establishment of Judicial Ditch No. 17, 263 Minn. 547, 117 N. W. (2d) 392. It provides that where drainage ditches have been or are about to be constructed which empty or will empty into an existing drain or watercourse and the construction has caused or will cause that drain or watercourse to overflow and inundate the adjoining lands, a petition may be filed by 26 percent of the resident owners of such lands or the owners of 26 percent of the land requesting improvement of the drain or watercourse. Section 106.511 establishes the content of the petition, the method of assessment, and the procedure to be followed. Unless otherwise specified, this procedure is to be the same as that provided for the establishment of the public drainage system (Minn. St. 106.011 to 106.661). Thus, the nature and content of the preliminary hearing which resulted in the order appealed from are governed by § 106.101.

Minn. St. 106.101, subd. 4, provides:

"At said hearing or any adjournment thereof, if it shall appear that the proposed improvement is not feasible, and no plan is reported by the engineer whereby it can be made feasible, or that it is not of public benefit or utility, * * * the petition shall be dismissed."

Although the trial court's memorandum was not made part of the order denying the petition, in the absence of any findings or conclusions it is the only indication of the basis for denial. From it we conclude that the court believed the high cost of the only plan proposed which would alleviate both the flooding and the erosion made it unfeasible. The testimony of the engineer established that the plan proposed in the petition would not halt the erosion and would affect the flooding on the property of only two of the petitioners. The land involved is virtually all wooded pasture land. There is no cropland along the 5-mile course of Morgan Creek. While the determination of benefits is for the viewers, we cannot say the evidence did not justify the trial court's determination that a plan which required the expenditure of an estimated $134,692 to correct erosion and flooding of such land was not feasible.

■ Petitioners contend that the flooding and erosion have resulted in a taking of their land without just compensation. They contend that the proceedings under § 106.511 constitute the only remedy open to them. While this may be true at the present time, it is the fault of petitioners or their predecessors, not the statute. One of the purposes of the hearing prior to establishment of a public drainage system under the Drainage Code is the determination of adequacy of the outlet for the proposed ditch. Petitioners' contention that Morgan Creek is an inadequate outlet could have been raised at the time the ditches were established. If the landowners did not wish to join as objectors in the ditch proceedings, they had a right under § 106.511 or, prior to 1947, under Minn. St. 1945, § 106.77, to petition for improvement of the outlet or consolidation of the system prior to the time the ditch was authorized. By either method of bringing the potential damage to the attention of the establishing authority, they might have prevented construction of the ditches or obtained an award of damages equal to the value of the property to be taken. Due to the nature of the land involved, such an award may well have been considerably less than the amount now required to improve Morgan Creek in the manner the engineer testified is necessary to correct the problem. Under these circumstances we cannot say that relief under § 106.511 is now constitutionally required.

The order denying the petition is affirmed.