In the Matter of the **REPAIR AND IMPROVEMENT OF JUDICIAL DITCH NO. 9 FREEBORN COUNTY, Minnesota.**

**Robert D. MAXWELL, et al.,**
**Respondents,**

v.

**COUNTY OF FREEBORN, Appellant.**

**No. CX–85–1109.**

Court of Appeals of Minnesota.

May 6, 1986.

Byron J. Casey, George E. Dow, Owatonna, for respondents.

Craig S. Nelson, Albert Lea, for appellant.

Heard, considered and decided by RANDALL, P.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

Freeborn County Board of Commissioners appeals from a May 7, 1985 judgment dismissing its petition for improvement of an existing drainage system under Minn. Stat. § 106.501 (1984). We affirm.

## FACTS

Judicial Ditch No. 9 was originally established in 1923 and lies entirely in Freeborn County. The system is composed of a main tile line which empties into an open ditch; the open ditch then empties into a larger tile line which proceeds arpproximately two miles to the point of outlet into Pickerel Lake. Branches enter the main tile line and open ditch segments at various points along the length of the main tile/ditch line.

A petition for repair and improvement was originally filed on September 16, 1980 and later modified to a petition for improvement only based on the recommendations of the project engineer. Viewer's reports were subsequently filed and numerous hearings were held. On July 19, 1983, the board approved the petition. Its order contemplated replacement of broken tile and installation of an auxiliary pumping system designed to outlet surplus waters into Upper Twin Lake, two miles upstream from Pickerel Lake. The proposed pumping station was to be located near the point where the open ditch enters the large main tile line. The purpose of the new pumping system would be to relieve pressure upon the existing large tile which has been in

place for approximately 60 years. Upper Twin Lake is not within the existing watershed of Judicial Ditch No. 9. When the water reaches a certain elevation as determined by the setting on the pump, the pump would operate to divert the surplus water to Upper Twin Lake. This surplus water would be pumped under a county road and then would be routed through a new lateral ditch called Branch A.

Following appeal by objecting landowners, the July 19, 1983 order was remanded by the district court when the viewer's report failed to consider benefits paid by the landowners at the time the ditch was originally established. After remand, a new viewer's report was issued which clarified procedures but made no significant engineering changes. On September 18, 1984, the board adopted the viewer's report by resolution.

The landowners again appealed the decision, and a trial de novo was held. At trial, project engineer Harold Zenk testified that the drainage system was of "marginal" effectiveness when constructed in 1923 and that it was "essential to replace the entire system * * *." Zenk explained that a number of alternatives were considered, including installation of a parallel tile, but that the estimated cost ($1 million) was not economically feasible.

Zenk agreed that Upper Twin Lake, the proposed outlet, was not part of the original watershed:

Q. So what they did in 1923 was to establish a watershed that drained everything into Pickerel Lake?

A. [Zenk] Yes.

   *   *   *   *   *   *

Q. So all the watershed as shown on that original map took all of that water north?

A. Yes.

Q. None was taken into Upper Twin Lake?

A. Not as the ditch was constructed.

Landowners testifying at the trial generally agreed that the current system was in need of modification, but disputed that improvement rather than repair was desirable.

The trial court found that initial filing of the petition was proper under Minn.Stat. § 106.501 (1984), but that the proposed improvement violated subdivision 3 of the statute. In dismissing the petition, the trial court found that the proposal:

[C]reates a new outlet and pumping station located approximately two miles upstream from the outlet into Pickerel Lake. The new outlet and pumping station will outlet water outside the watershed and into Upper Twin Lake. This is a violation of Minnesota Statutes 106.-501, Subd. 3. It also changes the watershed as established by the Order of 1923 which established this ditch.

## ISSUE

Is the County's proposal for a pumping station that mechanically redirects surplus water flow and forces it through a new lateral branch into an outlet beyond the original watershed that is two miles upstream from the existing outlet, an improvement as contemplated under Minn. Stat. § 106.501, subd. 3 (1984)?

## ANALYSIS

We note from the outset that appeal is taken solely from the judgment; no posttrial motions were made. Accordingly, our review is limited to whether the evidence supports the trial court's findings and whether the findings sustain the conclusions of law. *Johnsrud v. Tri-State Sales, Inc.,* 353 N.W.2d 255, 257 (Minn.Ct.App. 1984).

Drainage proceedings in Minnesota "are purely statutory and their validity depends upon a strict compliance with the provisions of the statute by which they are regulated or controlled." *In re County Ditch No. 11, Martin County,* 253 Minn. 367, 370, 91 N.W.2d 657, 660 (1958).

"A statutory petition is a jurisdictional prerequisite to the authority of the court or county board to proceed in the matter of establishing a ditch." *In re Judicial Ditch*

No. 12, 227 Minn. 482, 492, 36 N.W.2d 336, 341 (1949). Minn.Stat. ch. 106 details five distinct types of drainage proceedings, each commenced by petition and carried on in accordance with due process standards. *In re County Ditch No. 1, Faribault County*, 237 Minn. 358, 360–61, 55 N.W.2d 308, 310–11 (1952). The five proceedings are as follows:

(1) The original proceedings (§ 106.031, et seq.) for establishment of a drainage system, either by way of a county ditch, or by a judicial ditch where more than one county is involved; (2) a proceeding (§ 106.471) to repair an established drainage system * * *; (3) a proceeding (§ 106.501) for the improvement of an existing system; (4) a proceeding (§ 106.-511) to improve an outlet for an established ditch; and (5) a proceeding (§§ 106.521 and 106.531) to establish laterals to drainage systems already established under (1).

*Id.* at 361, 55 N.W.2d at 310–11.[1] Each proceeding contains its own statutory prerequisites for obtaining jurisdiction. *In re County Ditch No. 31 & Judicial Ditch No. 13, Faribault County*, 244 Minn. 543, 552, 70 N.W.2d 853, 860 (1955).

■ Respondents assert that the proper petition for appellant's contemplated action is found in Minn.Stat. § 106.031 which requires signatures representing a majority of affected land. The trial court rejected this argument, finding Minn.Stat. § 106.-501 the proper avenue for appellant's proposal. We agree with the trial court. Minn.Stat. § 106.031 deals specifically with *establishment* of a drainage system, not modification thereof. As such, it is inapplicable to the facts before us.

■ We are also in accord with the trial court's initial determination that the petition was properly filed under Minn.Stat. § 106.501, which requires signatures representing at least 26% of affected land. *See* Minn.Stat. § 106.501, subd. 1. A petition

for improvement of a public drainage system under this section, whether by "tiling, enlarging or extending" shall designate:

[T]hat the ditch is of insufficient capacity or needs enlarging or extending so as to furnish sufficient capacity or a better outlet; with a description of the starting point, general course and terminus of any extension, and that the proposed improvement will be of public utility and promote the public health.

*Id.* Although appellant's petition fulfilled these prerequisites, this fact alone does not resolve the jurisdictional issue.

■ Appellant was further charged with proving that the proposed construction complied with the statutory definition of an improvement as set out in Minn.Stat. § 106.501, subd. 3:

Subd. 3. **Definition, excludes extension of original ditch system.** The improvement contemplated by this section may include *extension only downstream to a more adequate outlet, not exceeding one mile, and the straightening, deepening, or enlarging of the original ditch system*, including the construction of open ditches for relief of or in place of tile or the construction of tile in place of open ditch, *but shall not include any extension of the original ditch system, except outlet extension.* This subdivision shall apply only to ditch improvement proceedings instituted after the effective date of this act. (Emphasis supplied.)

The supreme court previously determined that "enlarging," as used in Minn. Stat. § 106.501, subd. 1, refers to the "capacity" of a system to drain lands it served. *See In re County Ditch No. 3, Martin County*, 239 Minn. 126, 58 N.W.2d 61 (1953). In that case, the court ultimately held that the proposal to construct an auxiliary open ditch *parallel* to the main tile line did not equate to construction of a new

---

1. Minn.Stat. ch. 106 was repealed and recodified as Minn.Stat. ch. 106A effective August 1, 1985. 1985 Minn. Laws ch. 172. Since the original petition and all proceedings in the instant case

took place before the effective date, the summary of proceedings set out above remains applicable.

ditch and was properly instituted as an improvement:

> The findings here definitely establish that the proposed improvement is necessary to adequately drain the lands intended to be drained by the system and that its accomplishment would be for the public benefit. No new lands are involved and the net result of the improvement constitutes an enlargement of an existing system insofar as its capacity is concerned.

*Id.* at 129, 58 N.W.2d at 63; *see also Janssen v. County of Chippewa,* 256 Minn. 182, 98 N.W.2d 239 (1959). Significantly, only a short time after *County Ditch No. 3, Martin County* was decided, subdivision 3 was added to Minn.Stat. § 106.501, further defining what constitutes an improvement. 1953 Minn. Laws ch. 533 § 1.

In another case, the supreme court determined that the proposed construction of an open ditch qualified as "straightening" under Minn.Stat. § 106.501, subd. 3, even though it deviated at various points from the original tile ditch. *In re County Ditch No. 21, Redwood County,* 262 Minn. 210, 114 N.W.2d 572 (1962). An engineer testified that the deviation was necessary to mitigate damages. In affirming the trial court, the supreme court stated:

> [D]eviations from the course of the original tile ditch within a more or less adjacent and similar course, as in the instant case, constitute a change which is an improvement within the spirit of the law. We note that in § 106.501 the key words are "the straightening, deepening, or enlarging of the original ditch system."

*Id.* at 216, 114 N.W.2d at 576.

Here, the deviation as proposed does not constitute an improvement as envisioned under Minn.Stat. § 106.501, subd. 3. The statute could not be more clear in its limitation to "extension only *downstream* to a more adequate outlet * * *." *Id.* (emphasis supplied). In this case, we are presented with an unusual situation; the natural flow of water in Judicial Ditch No. 9 along the main tile line is from south to north, for

approximately two miles to the Pickerel Lake outlet.[2] "Downstream" in this ditch is in the direction of Pickerel Lake.

We are not persuaded by appellant's argument that the contemplated action falls within the statute on the theory that Upper Twin Lake is downstream from the beginning of the ditch system. In determining whether the *extension* is downstream, it necessarily follows that Pickerel Lake, the outlet selected when the system was established, is the proper reference point. Appellant's contemplated use of Upper Twin Lake as a new outlet is therefore an *upstream* extension, an action prohibited under the statute.

■ Furthermore, the proposed pumping station would drastically change the original ditch system by artificially redirecting the flow of surplus water from north to south and forcing it into Upper Twin Lake. We do not believe use of a mechanical contrivance in this way is authorized under subdivision 3. *Cf. Pell v. Nelson,* 294 Minn. 363, 201 N.W.2d 136 (1972) (use of mechanical contrivance to discharge water onto adjacent property rather than gravity drainage of collected surface water constituted an unreasonable use of land). This is particularly so in view of appellant's concession both at trial and during oral argument that Upper Twin Lake is outside the original watershed. Appellant cites no case, nor are we aware of any, supporting the proposition that contemplated drainage extension outside the original watershed is tantamount to an improvement under subdivision 3. To the contrary, such an extension would deprive landowners of a vested property right:

> We have often held that, when a ditch system is once established, owners of land who have recovered damages or who have been assessed for benefits for its construction have a *vested property right in the maintenance of the ditch in the same condition as it originally was established,* which right cannot be divested without due process of law.

2. This is much the same as the Red River of the North in Minnesota.

*County Ditch No. 31 & Judicial Ditch No. 13, Faribault County,* 244 Minn. at 552, 70 N.W.2d at 860 (footnote omitted) (emphasis supplied).

Our disposition renders discussion of additional claims raised by the County unnecessary. We conclude that a proposed pumping station designed to mechanically redirect the flow of surplus water and force it away from the existing ditch into Upper Twin Lake, an outlet upstream from the existing outlet, Pickerel Lake, and outside the original watershed, does not qualify as an improvement under Minn.Stat. § 106.501, subd. 3. If a future petition for an improvement qualifies under the statute, the effect, if any, on the vested rights of owners of land must then be addressed, including consideration of the issues of benefits and damages.

### DECISION

The trial court properly dismissed appellant's petition for improvement of an existing drainage system for failure to qualify as an "improvement" as defined in Minn. Stat. § 106.501, subd. 3.

Affirmed.