MARSHALL COUNTY, in its legal capacity as a drainage authority under Minn.Stat. Chapter 103E, et al., Respondents,

v.

The STATE of Minnesota & its Department of Natural Resources, et al., Appellants.

No. CX–01–716.

Court of Appeals of Minnesota.

Dec. 4, 2001.

---

Michael O. Freeman, Amy Reed, Lindquist & Vennum, P.L.L.P., Minneapolis, MN, for respondents.

Mike Hatch, Attorney General, Craig L. Engwall, Assistant Attorney General, David P. Iverson, Assistant Attorney General, St. Paul, MN, for appellants.

Noah D. Hall, Leonard, Street and Deinard, Minneapolis, MN, for amici curiae Izaak Walton League, et al.

---

Considered and decided by ANDERSON, Presiding Judge, SCHUMACHER, Judge, and FORSBERG, Judge.

## OPINION

FORSBERG, Judge.*

Appellant State of Minnesota challenges the district court's grant of summary judgment to respondents, requiring the state to pay assessments on state lands for certain ditch improvements. The state alleges (a) there was no approval of the assessment by the Commissioner of the Department of Natural Resources (DNR) under Minn. Stat. § 84A.55, subd. 9 (2000); (b) the legislative history of that section shows that the state is to control assessments on public lands; (c) the district court misread Minn.Stat. § 84A.55, subd. 12 (2000), to limit the commissioner's authority to approve assessments; (d) the district court erred in concluding that requiring the commissioner's approval to put an assessment on state lands violates the landowner's right to have a ditch repaired; and (e) the lack of administrative rules regarding the determination of benefits for state lands does not preclude application of Minn.Stat. § 84A.55, subd. 9.

## FACTS

In the early 20th century, large amounts of land in northern Minnesota deemed unsuitable for agriculture became part of a massive construction project that created a system of public ditches to drain the land. Construction costs were charged back to the landowners benefiting from the system as ditch assessments. But much of this land proved incapable of supporting agriculture—even after these ditches were

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

constructed—and many farms went bankrupt as the result of unpaid ditch liens. The massive forfeitures threatened the financial collapse of the affected counties. The state took title to this land in 1929 as part of a tax-forfeiture bailout, and the DNR now manages more than 1.5 million acres of this tax-forfeited land commonly known as consolidated conservation lands, or "con-con" lands, under the supervision of its commissioner. The acts governing the con-con lands are codified in chapter 84A of the Minnesota statutes. Over the years, the DNR has classified these lands for various purposes, including forestry, wildlife, and flood control.

Marshall, Beltrami, and Roseau counties (respondent counties) in their capacities as drainage authorities have constructed and maintained drainage systems in each of the respective counties for many decades. In order to fund these systems, respondent counties have levied assessments against the lands that purportedly benefit from each system, including state-owned con-con lands.

During the 1980s, the state disputed assessments made by respondent counties against the con-con lands, arguing that the assessments were not in line with the true benefits to those lands. In 1989, the state attempted to work with respondent counties to establish a redetermination of benefits to the con-con lands. In July 1992, the state sent a letter to respondent counties indicating that it would pay the assessments that had been presented over the previous ten years, but would not pay any future assessments until a joint review of the benefits was completed. Then, in 1993, the state ceased paying assessments on Marshall, Beltrami, and Roseau county con-con lands where a redetermination had not taken place. The state continued to pay assessments on lands other than con-con lands and on con-con lands where a redetermination of benefits had taken place.

Respondent counties and certain landowners brought this action in an effort to force the DNR to pay drainage assessments for ditch repairs. The parties brought cross-motions for summary judgment on stipulated facts. The district court granted respondents' motion for summary judgment, and this appeal followed.

## ISSUES

I. Does the Commissioner of the Department of Natural Resources have discretion to decline to pay ditch assessments as determined by counties acting as chapter 103E drainage authorities?

II. May agency action be barred by that agency's failure to promulgate a rule within a statutory time frame?

III. Does a property right in a drainage system compel the state to pay ditch assessments as determined by counties acting as chapter 103E drainage authorities?

## ANALYSIS

■■■ The state appeals from summary judgment, arguing that Minn.Stat. § 84A.55, subd. 9 (2000), grants the commissioner discretion in approving or denying assessments on con-con lands. On appeal from summary judgment on stipulated facts, this court's lone task is to determine if the district court erred in its application of the law. *Fingerhut Corp. v. Suburban Nat'l Bank*, 460 N.W.2d 63, 65 (Minn.App.1990). Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998). When the district court grants summary judgment based on the application of a statute to undisputed

facts, the result is a legal conclusion, to be reviewed de novo. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn.1998).

## I.

■ Respondents argue that chapter 103E makes payment of ditch assessments mandatory. Chapter 103E establishes the rules by which drainage authorities build and maintain public drainage systems. The drainage authority evaluates a proposed project in light of several environmental and land-use criteria to establish whether it is "of public utility, benefit, or welfare." Minn.Stat. § 103E.015 (2000). State lands used for conservation may be assessed. *See* Minn.Stat. § 103E.025, subd. 3 (2000). In determining benefits to the state land, "proper consideration must be given to the value of the area for the purpose it is held or used by the state." *Id.* The process for assessing drainage benefits and damages is laid out in Minn. Stat. § 103E.315, subds. 5–8 (2000). Upon proper consideration of the proposed project, the drainage authority shall establish

the project if, *inter alia*, it will be of public utility and benefit and the estimated benefits are greater than the total estimated cost. Minn.Stat. § 103E.341, subd. 2 (2000). This determination may be redetermined if it is no longer accurate. Minn. Stat. § 103E.351 (2000).

After the drainage system is established, the drainage authority must maintain it. Minn.Stat. § 103E.705 (2000). "All * * * costs of * * * repair * * * must be assessed against the property and entities benefited." Minn.Stat. § 103E.725 (2000).[1]

Although respondents assert that the whole of chapter 103E evinces a "clear intent" that the state pay assessments on its land, they are unable to cite any provision that is so clear. Section 103E.025, subdivision 5,[2] simply notes the source of the funds from which assessments must be paid; section 103E.315, subdivisions 1 and 2,[3] only provide that benefits and damages must be reported for state lands generally; and section 103E.615, subdivision 5,[4] merely provides that state property is "assessable," reiterates the location of the funding source to be used for paying assessments,

1.  Contrary to respondents' assertions, this provision does not stand for the proposition that assessments are mandatory for all benefiting property owners. The subject of Minn. Stat. § 103E.725 is "fees and costs" and not "the property and entities benefited." Therefore this provision refers only to which costs are included (all) and not to whom they might be assessed.

2.  Minn.Stat. § 103E.025, subd. 5 (2000), states:

    Assessments for benefits made against the state land or water area in a proceeding must be paid out of money appropriated and available to pay assessments as provided by law.

3.  Minn.Stat. § 103E.315, subd. 1 (2000), states:

    Property owned by the state must have benefits and damages reported in the same manner as taxable lands subject to the pro-

visions relating to conservation areas in section 103E.025.

Minn.Stat. § 103E.315, subd. 2 (2000), states: The viewers shall report the benefits and damages to the state, counties, and municipalities from the proposed drainage project. The property within the jurisdiction of a municipality, whether owned by the municipality or by private parties, may be assessed as benefits and damages to the municipality.

4.  Minn.Stat. § 103E.615, subd. 5 (2000), states:

    State property, including rural credit property, is assessable for benefits received. The assessment must be paid by the state from funds appropriated and available for drainage assessments after the state officer having jurisdiction over the assessed property certifies the assessment to the commissioner of finance.

and even specifically provides that the state officer with jurisdiction over the property must certify the assessment first.

The balance of respondents' chapter 103E argument is that, because it compels the maintenance and establishment of drainage systems, the state is therefore compelled to pay for them. But this conclusion does not follow. Even if the county must maintain certain ditches, respondents fail to cite any rationale for why the state is compelled to pay for them.

■ In contrast, chapter 84A grants the state discretion in paying assessments on con-con lands. A significant point of emphasis throughout chapter 84A is the power of the commissioner to manage the con-con lands. *See* Minn.Stat. §§ 84A.02, .21, .32 (2000). Minn.Stat. § 84A.55, subd. 9, provides:

> **Drainage.** The commissioner may make necessary investigations and surveys for and may undertake projects for the drainage of state-owned lands within a game preserve, conservation area, or other area subject to this section so far as the commissioner determines that the lands will benefit from the project for the purposes for which the area was established. The commissioner may pay the cost of drainage projects out of funds appropriated and available for them. *If the commissioner finds* after investigation that a project for the construction, repair, or improvement of a public ditch or ditch system undertaken by a county or other public agency as otherwise provided by law will benefit the lands for those purposes, the commissioner *may* cooperate in the project by joining in the petition for the project or consenting to or approving it *on any conditions the commissioner determines.* The commissioner *shall* authorize the imposition of assessments for the projects on the lands *in any amounts the commissioner determines,* or may make lump sum contributions to the county or other public funds established for the payment of the cost of the project. The assessments or contributions must not exceed the value of benefits to the state-owned lands *as determined by the commissioner* and specified by written certificates or other statement filed in the proceedings. Assessments or contributions are payable only out of funds appropriated and available for them in amounts the commissioner determines.

(Emphasis added.) The repeated use of discretionary language in this provision reveals the intent to grant the commissioner almost total discretion in deciding how much should be paid for assessments on con-con lands.

Respondents assail this provision in several ways. First, they argue that this provision does not address ditch maintenance, but only construction, repair, or improvement of future ditches. But respondents do not indicate how ditch maintenance is distinguishable from ditch repair, and we make no such distinction independently.

■ Respondents next suggest that section 84A.55, subdivision 12, prohibits the commissioner from declining to pay the assessment as determined by the counties. This provision states:

> Nothing shall be done under this section that will interfere with the operation of ditches or drainage systems existing in [the con-con lands] * * *, unless the right to them is first acquired by the commissioner by purchase or condemnation, upon payment of just compensation to the political subdivision, public agency, or person affected and damaged.

At issue here is the meaning of the phrase "nothing shall be done * * * that will interfere with the * * * [existing] ditches or drainage systems." Respondents argue that this is a broadly-worded phrase that prevents the commissioner from refusing to pay assessments as determined by the counties. But that interpretation would certainly conflict with the discretion accorded to the commissioner in section 84A.55, subdivision 9, a disfavored result. *See* Minn.Stat. § 645.26, subd. 1 (2000) (stating that apparently conflicting statutes should be harmonized where possible). The meaning of section 84A.55, subdivision 12, is narrower than that proposed by respondents. As the state suggests, this provision forbids *physical* alteration of the ditch system without the state first acquiring property rights. Because section 84A.55, subdivision 12, need not be read to conflict with section 84A.55, subdivision 9, we decline to construe it as broadly as suggested by respondents.

Finally, respondents suggest that to grant this authority to the state would effectively invalidate chapter 103E. But as noted earlier, chapter 103E does not grant authority to the counties to be the final arbiters of the appropriate ditch assessment. Rather, it only prescribes how counties are to make such assessments. Furthermore, even if chapters 84A and 103E did conflict, chapter 84A prevails because, as its focus is limited to con-con lands, it is the more specific statute. *See* Minn.Stat. § 645.26, subd. 1 (specific statutes prevail over general ones).

The principle emerging from reading all of these statutes together is that chapter 103E permits counties to make assessments to lands (including con-con lands); section 84A.55, subdivision 9, grants the

commissioner the discretion to pay such assessments to the extent to which they are beneficial; and section 84A.55, subdivision 12, forbids the commissioner from eliminating or physically altering existing ditches or drainage systems that they do not own—even if the commissioner determines that they are detrimental to the con-con lands.

### II.

■ Respondents next argue that the commissioner's failure to establish, through the rulemaking process, the procedures for determining benefits for the con-con lands has resulted in an arbitrary agency action.[5] Minn.Stat. § 84A.55, subd. 9, provides that the

> commissioner of natural resources *shall* establish by rule before January 1, 1986, the criteria for determining benefits to state-owned lands held or used to protect or propagate wildlife, provide hunting or fishing for the public, or serve other purposes relating to conservation, development, or use of soil, water, forests, wild animals, or related natural resources.

By all accounts, the commissioner has failed to do so. Respondents suggest that this failure makes the commissioner's subsequent refusal to pay the assessments an arbitrary state action. The state, on the other hand, argues that this failure is irrelevant—the statute still grants the commissioner discretion.

As the rule-making requirement of section 84A.55, subdivision 9, was not added until 1984, the balance of section 84A.55, subdivision 9 (granting the commissioner discretion in paying assessments), was in effect prior to the requirement that the

---

**5.** As a preliminary matter, we note that this very argument presumes the relevance of the

commissioner's determination.

discretion be exercised pursuant to an established rule. Clearly, prior to 1984, the commissioner could exercise discretion independent of any rule-making requirement. The only issue remaining, then, is whether the addition of the rule-promulgation requirement made determinations after January 1, 1986, arbitrary if made without the benefit of a rule.

Although this question has not been previously addressed in Minnesota, federal courts recognize that the failure of an agency to act within a statutory time frame does not bar subsequent agency action absent a specific indication that the time frame was intended to act as a bar. *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1400 (9th Cir.1995) (interpreting clause in endangered-species act requiring secretary of the interior to act on proposed listings within a year by publishing either a rule or a notice withdrawing the rule). This intent may be manifested through legislative history, statutory language prescribing consequences for failure to promulgate the rule, and the availability of a less drastic remedy, such as a suit to compel agency action. *Id.*

■ Here, respondents have shown no legislative history, the rule itself does not prescribe any consequence for the agency's failure, and the counties retained the ability to compel the commissioner, through a mandamus proceeding, to continue with the rule-making process. The fact that respondents chose to not do so speaks more to respondents' legal strategy than the equity of the matter; if they had sought mandamus, they would have effectively admitted the DNR's power to independently determine what benefits the agency would finance. We conclude that agency action in this case is not barred by the failure to promulgate an appropriate rule in a timely manner.

# III.

■ Lastly, respondents allege that private landowners affected by a drainage system maintain a property right in the drainage system, and that the DNR's failure to pay the assessments has improperly divested the other landowners of that property right. Indeed,

> when a ditch system is once established, owners of land who * * * have been assessed for benefits for its construction have a vested property right in the maintenance of the ditch in the same condition as it originally was established, which right cannot be divested without due process of law.

*Oelke v. Faribault Cty.*, 244 Minn. 543, 552, 70 N.W.2d 853, 860 (1955); *see also Fischer v. Town of Albin*, 258 Minn. 154, 158, 104 N.W.2d 32, 35 (1960). While the state quibbles over whether this right extends to, for example, the right to demand a specific repair, it does not contest the existence of such a property right. The existence of this right is further evidenced by the legislature's specific instruction that the DNR shall not obstruct or interfere with the operation of existing drainage systems unless compensation is made to affected property. Minn.Stat. §§ 84A.32, subd. 1(d), .55, subd. 12.

■ But the mere existence of a property right does not mean that the DNR must pay the assessments as determined by the counties. It is not a deprivation of property rights to limit assessments to the extent of benefits. *In the Matter of the Redetermination of Benefits of Nicollet County Ditch 86A*, 488 N.W.2d 482, 486 (Minn.App.1992). Furthermore, the state's refusal to pay for assessments that it believes are unsupported does not change the property rights of the parties. Respondent counties are not relieved of their duty to maintain the ditches. Although the state-paid portion of the ditch-

maintenance costs may decrease, thereby increasing the financial burden on the counties and private landowners, *see* Minn. Stat. § 103E.728 (2000) (costs of ditch repair assessed "pro rata" on the benefiting property and entities), respondents have not suggested the source of any right to have drainage subsidized by the DNR when the DNR has determined that it receives no benefit from the drainage.

## IV.

Respondents' motion to strike the *amicus curiae* brief and appendix is denied.

## DECISION

The Commissioner of the Department of Natural Resources was authorized to decline to pay ditch assessments as determined by counties acting as chapter 103E drainage authorities. The Minnesota Department of Natural Resources' failure to promulgate a rule pertaining to payment of ditch assessments within the statutory time frame did not bar the department from subsequently declining to pay those assessments. The state is not compelled to subsidize the cost of constitutionally-guaranteed drainage ditches where it has determined that its lands are not benefited by the ditches.

**Reversed; motion denied.**