263 Minn. 547 (1962)
117 N.W. (2d) 392
IN RE PETITION FOR ESTABLISHMENT OF JUDICIAL DITCH NO. 17, MEEKER AND KANDIYOHI COUNTIES.
MILO A. JOHNSON
v.
THEO. HEDTKE AND OTHERS.
No. 38,503.
Supreme Court of Minnesota.
October 5, 1962.
Charles A. Swenson, for appellant.
H.R. Pfeiffer, for respondents.
NELSON, JUSTICE.
Appeal by Milo A. Johnson from an order of the District Court of Meeker County establishing Judicial Ditch No. 17 in Meeker and Kandiyohi Counties, part of which order determined:
"That it is not necessary in this proceeding that there be compliance *548 with M.S.A., Section 106.511 and the motion for such compliance and for a stay of proceedings herein is denied."
The parties agree that the facts are as follows: Meeker County Ditch No. 10 was established January 13, 1902, and constructed in that year. It has its outlet in the middle fork of the Crow River. County Ditch No. 47 was established in Meeker County November 2, 1917, its main ditch following the course of the middle fork of the Crow River and a branch, designated Branch No. 1, being established over the lower 2 1/2 miles of County Ditch No. 10 and proceeding southerly upgrade from the outlet of that ditch to a point on the south boundary line of section 7, township 112, range 32. Branch No. 1 of County Ditch No. 47 deepened and widened that portion of County Ditch No. 10, but through the years the remaining "upper" portion of County Ditch No. 10 became so filled in places with dirt, grass, and other vegetation that when this proceeding was initiated the situation was about the same as it had been before that ditch was constructed. The parties agree that County Ditch No. 10, including the portion taken over by Branch No. 1 of County Ditch No. 47, followed the proper course for the drainage of water in the watershed area, that no substantial deviation from such course is practicable, and that fall is ample for drainage purposes. Judicial Ditch No. 17, established by this proceeding, drains the same watershed as the earlier ditches and its main ditch has substantially the same course as County Ditch No. 10. Thus, the new ditch necessarily includes what had been the upper part of County Ditch No. 10 and also Branch No. 1 of County Ditch No. 47 and has the same outlet as these ditches, namely, the middle fork of the Crow River as improved by the main ditch of County Ditch No. 47. Judicial Ditch No. 17, will, however, be wider and deeper than Branch No. 1 and the remaining portion of County Ditch No. 10.
The trial court found that the proceeding had been in accordance with law, a finding appellant does not challenge. He claims, however, that the court was without jurisdiction to establish Judicial Ditch No. 17 over Branch No. 1 since the latter is a part of County Ditch No. 47, the outlet ditch. He asserts that the new ditch by widening and deepening the branch is in effect an improvement of the outlet ditch and *549 that Minn. St. 106.511 requires that a petition for such an improvement be signed either by the county board of an affected county or by 26 percent of the resident owners of adjoining lands or by the owners of not less than 26 percent of the area of such lands. He therefore contends that the trial court erred in denying his motion to require compliance with § 106.511 and for a stay of proceedings until such compliance had been obtained.
It is obvious from a reading of the record that there is a drainage problem in the watershed involved in this proceeding which has not been fully solved heretofore either by the establishment of County Ditch No. 10 or by the construction of Branch No. 1 of County Ditch No. 47. Respondents, petitioners for the establishment of Judicial Ditch No. 17, contend that the drainage problem can be solved only if the new ditch is established over the course of the remainder of County Ditch No. 10 and over Branch No. 1 of County Ditch No. 47. The parties agree that Judicial Ditch No. 17 necessarily includes the previous ditches.
Respondents further contend that Judicial Ditch No. 17 is not a twofold project  one part ending at the upper end of Branch No. 1 of County Ditch No. 47 and the other part beginning at that point and improving the branch to the outlet ditch, County Ditch No. 47  but it is one indivisible and complete project which takes over and includes County Ditch No. 10 and Branch No. 1 of County Ditch No. 47. They point out that in past attempts to solve the drainage problem in this locality Branch No. 1 itself took over a part of County Ditch No. 10 and claim that these older ditches now cease to have any separate identity by becoming an integral and inseparable part of the new ditch.
We think it clear that any new ditch which follows the course of an older ditch will be an improvement of the older ditch as a physical fact, because the new ditch will have to be wider and deeper in order to provide better drainage. That was the whole purpose of the petitioners here in asking for the new ditch where there was already an older, established ditch in the same watershed.
The issue is whether a new ditch may be established which takes *550 over a branch of an older outlet ditch as a part of the new ditch and makes that branch wider and deeper without proceeding separately under § 106.511 to improve it. The question raised thereby is whether § 106.511 changes the law heretofore established that a new ditch can take over a preexisting ditch.
1. It seems to us, as respondents contend, that the part of the Drainage Code covered by § 106.511 was designed to permit landowners adjacent to an outlet for existing drainage to secure improvement of the outlet to prevent flooding of their lands. The purpose of this section is apparent from its first sentence, which provides:
"In any case where one or more ditches or drainage systems, either public or private, have been constructed, or in any case where proceedings are pending for the construction of one or more public drainage systems, the waters from which do, or it is contemplated shall, empty into an existing drain or watercourse or body of water, and the construction of the drains has caused, or is likely to cause, the overflow of the existing drain, watercourse or body of water and the inundation of adjoining lands, any county affected or the owners of such adjoining lands may institute proceedings as follows: * * *."[1]
Section 106.511 (L. 1947, c. 143, § 51) derives from L. 1945, c. 33, an act entitled "An act authorizing the county boards * * * and the district courts * * * to deepen, widen and improve existing ditches forming the outlet for waters from ditches connected therewith * * *." As respondent points out, if public drainage had been established in the upper part of a watershed and the outlet had not become a part of the public drainage system and flooding then occurred along the outlet, there would be no statutory relief if § 106.511 were not in effect. Thus, § 106.511 has its proper purpose in our ditch law, but is in effect only a remedial statute.
2. The court below adopted the view that where a ditch has been *551 constructed that provides drainage for only part of the area in the drainage basin which requires drainage, another and more extensive ditch which will provide drainage for the lands not provided for in the first instance and which will more efficiently drain the lands sought to be drained by the first or prior ditches may properly be constructed under Minn. St. 1953, § 106.031, as amended by L. 1955, c. 800, § 1.[2] This statute, which respondents argue is controlling, provided in part:
"Before any public drainage system or other improvement authorized by sections 106.011 to 106.661, is established, a petition therefor shall be filed * * * with the clerk of the district court, if for a drainage system within two or more counties. Such petition shall be signed by not less than a majority of the resident owners of the land described in the petition or by the owners of at least 51 percent of the area of such land. The lands described in the petition shall be those over which the proposed ditch passes or upon which the improvement is located, and the petition shall set forth the description of such lands and shall set forth the necessity for the ditch or improvement, and that the same will be of public benefit and utility and will promote the public health, with the description of the starting point, the general course, and terminus or location of the same."
Respondents contend that this statute gave to the lower court the jurisdiction required to establish the new ditch. In Bomsta v. Nelson, 137 Minn. 165, 163 N.W. 135, this court held:
"Where a judicial ditch has been constructed which provides drainage for only part of the lands in the drainage basin which require drainage, a second and more extensive judicial ditch which will provide drainage for lands not provided for by the first, and will also more efficiently drain the lands sought to be drained by the first, may be constructed and may include the former ditch as a part thereof for the purpose of widening and deepening the former ditch and extending it to a proper outlet."
*552 In In re Establishment of Judicial Ditch No. 75, 172 Minn. 295, 297, 215 N.W. 204, 205, 216 N.W. 229, where the court's jurisdiction was challenged as it has been in the instant case, this court said:
"The petition is sufficient in form and substance to give the court jurisdiction and to authorize the establishment of the proposed system as asked for therein. The engineer's report recommends and the final order of the court establishes the proposed system as asked for in the petition. No branches are added nor extensions provided for. The source, general course and outlet are as asked for in the petition which was signed by the owners of not less than 51 percent of the land described therein."
It is agreed that in the instant proceeding the requisite number of qualified petitioners exist; that the petition calls for the main ditch of the proposed judicial ditch system to have substantially the same course as County Ditch No. 10; that the engineer's plans and the judicial ditch as established follow substantially the route of the main ditch as described in the petition and necessarily include what had been the upper part of County Ditch No. 10 and Branch No. 1 of County Ditch No. 47.
We think that Minn. St. 1953, § 106.031, as amended, indicates a clear legislative intent that any drainage improvement referred to in succeeding sections, including Minn. St. 106.511, may be made if this statute is complied with as a jurisdictional prerequisite. If this were not the intent, the words "or other improvement authorized by sections 106.011 to 106.661" are meaningless.
3. Appellant does not contend that there has been any lack of due process of law in the establishment of the new ditch or that the proceedings have not, subject to his objection, been had and taken in accordance with law. He cites as controlling or supporting his position the following cases: In re Petition for County Ditch No. 53, 238 Minn. 392, 57 N.W. (2d) 158; In re County Ditch No. 31 and Judicial Ditch No. 13, 244 Minn. 543, 70 N.W. (2d) 853; State ex rel. Mosloski v. County of Martin, 248 Minn. 503, 80 N.W. (2d) 637; In re Petition of Lippmann, 249 Minn. 1, 81 N.W. (2d) 100; and Fischer *553 v. Town of Albin, 258 Minn. 154, 104 N.W. (2d) 32. The facts in those cases are distinguishable from those involved in the instant case and are not controlling here. The new ditch here does not change the drainage of water in the watershed of the preexisting ditches but only improves it. We conclude that the court by the filing of the petition and the subsequent proceedings had acquired jurisdiction over the entire watershed and affirm the order establishing Judicial Ditch No. 17.
Affirmed.
NOTES
[1] Report of the Interim Commission to Revise and Codify Drainage and Water Resources Laws 1947, p. 67, commented: "Section 51 [§ 106.511] is intended to cover the subject matter of Section 106.77 and also Chapter 33, Laws 1945. The new law in short provides relief for overflowed lands at the outlet upon 26 per cent petition."
[2] The petition involved on this appeal was filed October 1, 1956.