The COUNTY OF SWIFT, Appellant,

v.

Bill BOYLE, Pope County
Auditor, Respondent.

The COUNTY OF SWIFT, Appellant,

v.

Dick BLUTH, Stevens County
Auditor, Respondent.

Ed WILSON, et al., Respondents,

v.

The COUNTY OF POPE, et al.,
The County of Stevens, et
al., Respondents.

The COUNTY OF POPE, et al., third-
party plaintiffs, Respondents,

v.

The COUNTY OF SWIFT, et al., third-
party defendants, Appellants.

No. C3–91–1347.

Court of Appeals of Minnesota.

Feb. 4, 1992.

Review Denied March 26, 1992.

Eric J. Magnuson, Amy K. Adams, Rider, Bennett, Egan & Arundel, Minneapolis, DePaul Willette, Willette, Kraft, Walser, Nelson & Hettig, Olivia, for Swift County.

Belvin Doebbert, Asst. Pope County Atty., Nelson, Obenland & Doebbert, Glenwood, for Boyle.

Charles C. Glasrud, Stevens County Atty., Morris, for Bluth.

Kurt A. Deter, Gerald W. Von Korff, Rinke–Noonan, St. Cloud, David McLaughlin, Pflueger, Knuz & McLaughlin, P.A., Ortonville, for Wilson, et al.

Considered and decided by SHORT, P.J., and SCHUMACHER and KLAPHAKE, JJ.

## OPINION

KLAPHAKE, Judge.

Swift County challenges the trial court's refusal to issue a writ of mandamus requiring Pope and Stevens County auditors to file ditch assessments against land in those counties for benefits attributable to a ditch built by and located in Swift County. We affirm.

## FACTS

Swift, Stevens and Pope Counties established a joint ditch authority, Joint Ditch 9,[1] having a watershed which included portions of each of the counties. Joint Ditch 9 emptied into Swift County Ditch 3, established in 1906. After Swift County Ditch 3 deteriorated, Swift County landowners petitioned the Swift County Board (Board) for a new ditch pursuant to the statutory provision for establishment of "a drainage system entirely within one county." The new

ditch was to replace Swift County Ditch 3, taking a significantly different route and draining lands in addition to those drained by Swift County Ditch 3. The petition stated:

[I]t is necessary that this drainage system be constructed to drain the lands traversed by the proposed drainage system and to drain waters from existing Judicial Ditch No. 9 [and two other ditches] all of which would outlet into the proposed drainage system and * * * which now outlet into existing [Swift] County Ditch No. 3.

The Board established the new ditch, Swift County Ditch 83, in February 1984. The Board order also approved the viewers' report identifying the lands the ditch benefitted and the extent of the benefits.[2] In their report, the Swift County viewers assessed benefits for the proposed ditch to watershed lands of Joint Ditch 9 lying in Stevens and Pope counties.

Identified benefitting landowners from all three counties challenged establishment of Swift County Ditch 83. Finding the challengers would be "indirectly and remotely affected" by the new ditch, the court dismissed the case for a lack of standing. Similarly, in 1985 members of the joint ditch authority[3] for Joint Ditch 9 challenged establishment of Swift County Ditch 83 but were also found to lack standing by the court because neither the lands owned by them individually nor the joint ditch authority had been assessed for construction of Swift County Ditch 83.

In 1985, the landowners who challenged establishment of Swift County Ditch 83 successfully challenged the constitutionality of the viewers' benefit assessment method. A reassessment was submitted and adopted by the Board. This reassessment included assessments against lands in Stevens and Pope Counties. The landowners' September 1987 motion to dismiss the reas-

---

1. A "joint ditch" is a ditch which drains areas in two or more counties. See Minn.Stat. § 106.-015, subds. 1 & 2 (1984).

2. "Viewers" are persons who "determine the benefits or damages to all lands and properties affected by the proposed drainage project." Minn.Stat. § 106.151 (1984).

3. Under Minn.Stat. § 106.015 (1984) a joint ditch authority is the entity responsible for a drainage system in two or more counties.

sessed benefits on grounds that Joint Ditch 9 already had an outlet to existing Swift County Ditch 3 was denied. In 1988, all assessment appeals were settled by stipulation, except one which was tried and appealed to this court but subsequently settled.

Ditch construction was completed in June 1988 at a cost of $887,813. In October 1988 and again in August 1989, the Board requested the auditors of Stevens and Pope Counties to file the costs assessed ($153,-414.08 and $41,016.96, respectively) against the lands in their counties deemed benefitted by Swift County Ditch 83. Neither auditor complied.

In September 1989, Swift County petitioned the trial court for a writ of mandamus directing the auditors of Stevens and Pope Counties to file the assessments. Additionally, during the fall of 1989, landowners in Stevens and Pope Counties sued their respective county auditors seeking a declaratory judgment that because Swift County Ditch 83 was not a joint ditch, the auditors had no authority to enter the assessments made on its behalf.

In December 1989, the declaratory judgment and mandamus actions were consolidated. In June 1990, the trial court granted the motion to intervene made by the landowners who had previously settled their assessments. All parties then entered an agreed statement of facts. In December 1990, the trial court granted Swift County's request for mandamus only to the extent of ordering the filing of assessments against those lands whose owners had previously settled their claims. Mandamus to file the assessments against other properties was denied on jurisdictional grounds:

> Swift County chose not to seek creation of a joint ditch authority pursuant to M.S. § 106.015. Having failed to adhere to the statutory process for establishing a drainage system in two or more counties, Swift County had no jurisdiction over persons or property in Pope and Stevens County. Receipt of a notice to establish Ditch 83 cannot be a submission to the jurisdiction of Swift County.

Arguably the decision to participate in the establishment appeal could constitute submission to Ditch 83 authority, but that argument is negated by [Swift County's] position and the Court's order holding that [the Pope and Stevens County landowners who own land in the watershed for Joint Ditch 9] were not aggrieved parties and had no standing in the Ditch 83 establishment proceeding. Those who did not appeal never were within the jurisdiction of Swift County with regard to establishment of Ditch 83. Swift County cannot pick and choose when participation in a ditch proceeding will be allowed, particularly with respect to property located in another county.

Swift County appeals the trial court's refusal to issue the requested writ. We affirm.

## ISSUES

1. Did Swift County have authority under Minn.Stat. ch. 106 (1984) to assess land in other counties that benefitted from construction of Swift County Ditch 83?

2. Did Swift County meet the procedural prerequisites under Minn.Stat. ch. 106 (1984) for assessing land in other counties that benefitted from construction of Swift County Ditch 83?

## DISCUSSION

We separately address the question of standard of review of the trial court's denial of Swift County's petition for mandamus because the parties disagree on this point. Swift County alleges that the appropriate standard of review is de novo because the matter was submitted to the trial court on stipulated facts. Respondents argue for a more traditional mandamus standard of review under our case law. We note that because of the consolidation, a declaratory judgment standard of review might also be relevant. See Minn.Stat. § 555.07 (1990) ("all orders, judgments and decrees under [the declaratory judgment statute] may be reviewed as other orders, judgments and decrees"). Although we apply a mandamus analysis, we note that we would not reach a different result using a different

standard of review because our holding is based upon statutory interpretation to which de novo review applies. *A.J. Chromy Constr. Co. v. Commercial Mechanical Serv., Inc.*, 260 N.W.2d 579, 582 (Minn. 1977).

The supreme court has stated:

Mandamus is an extraordinary legal remedy awarded, not as a matter of right, but in the exercise of sound judicial discretion and upon equitable principles.

*State ex rel. Hennepin County Welfare Bd. v. Fitzsimmons*, 239 Minn. 407, 422, 58 N.W.2d 882, 891 (1953). Further,

[b]efore the petitioner for a writ of mandamus is entitled thereto, he must show more than that there is a public wrong specifically injurious to him. He must show that such wrong consists of some failure of official duty *clearly imposed by law*, and that there is no other adequate specific legal remedy.

*State ex rel. Coduti v. Hauser*, 219 Minn. 297, 302, 17 N.W.2d 504, 507 (1945) (citation omitted) (emphasis added). Finally, "[t]o entitle [a mandamus petitioner] to the relief sought he should come into court with a *clear record.*" *Dale v. Johnson*, 143 Minn. 225, 226, 173 N.W. 417, 418 (1919) (citation omitted) (emphasis added).

Thus, regarding mandamus, the question here is whether this case presents a "clear record" of a "clearly imposed" legal duty requiring the Stevens and Pope County auditors to enter ditch assessments based on the report of Swift County viewers and whether the trial court abused its discretion in deciding it did not.

## I.

During the relevant period, Minn.Stat. ch. 106 (1984) governed ditch proceedings.

Under chapter 106 there are five types of ditch proceedings:

(1) The original proceeding, § 106.031, et seq. for establishment of a drainage system, either by way of a county ditch, or by a judicial ditch where more than one county is involved; (2) a proceeding, § 106.471, to repair an established drainage system * * *; (3) a proceeding, § 106.501, for the improvement of an existing system; (4) a proceeding, § 106.-511, to improve an outlet for an established ditch; and (5) a proceeding, §§ 106.521 and 106.531, to establish laterals to drainage systems already established under (1).

*Seidlitz v. Faribault County*, 237 Minn. 358, 360–61, 55 N.W.2d 308, 310–11 (1952). These statutory provisions create a two-tracked system for ditch proceedings. One track is for single county actions under which the county board is responsible for the ditch proceeding, and the second is for multi-county actions where a "joint ditch authority" is responsible for the ditch proceeding. While separate entities are responsible for a ditch proceeding depending upon its track, both the county board and the joint county ditch authority use essentially the same procedures in reaching their determinations.[4] *See* Minn.Stat. §§ 106.-031; 106.015 (petitions to establish a drainage system); 106.471, subd. 2 (1984); *see also* Minn.Stat. §§ 106.011, subd. 23 (repairs); 106.501, subd. 1 (improvements); 106.511 (outlet improvements); 106.521 (laterals); 106.531 (1984) (use of an existing ditch as an outlet). Finally,

Each proceeding has its own statutory prerequisite for obtaining jurisdiction,

---

**4.** Historically, a proposed ditch action involving more than one county had to be initiated in district court. All ditches established in district court, including multi-county ditches, were referred to as "judicial ditches" and all statutory references to such ditches and proceedings involving them referenced either or both of the "court" or "district court" and the "clerk" or "clerk of district court." On June 30, 1977, all "judicial ditches" were statutorily converted to "joint county ditches" subject to a "joint county ditch authority." *See* Minn.Stat. § 106.015, subd. 5 (1984). While the joint ditch authority had "all the powers and jurisdiction" of the district court, Minn.Stat. § 106.015, subd. 2 (1984); *see generally* Minn.Stat. § 106.015 (1984), the statutory references to the "court," "district court," "clerk" and "clerk of district court" did not immediately change to "joint ditch authority" and "county auditor." *See* Minn.Stat. ch. 106 (1984). This action was initiated after June 30, 1977, but was still subject to a statute containing the outmoded language. Therefore, in referring to various statutes, this opinion substitutes the new terminology as necessary.

and for obvious reasons, one proceeding may not be ordered under a petition for another type of work.

*Oelke v. County of Faribault,* 244 Minn. 543, 552, 70 N.W.2d 853, 860 (1955).

Here, according to the original petition:

[I]t is *necessary* that [Swift County Ditch 83] be constructed to drain the lands traversed by the proposed drainage system *and* to drain waters from existing Joint Ditch No. 9.

(Emphasis added). That it was "necessary" to construct a new ditch to drain Joint Ditch 9 implies that existing Swift County Ditch 3 was inadequate to drain it. This is consistent with the parties' agreed statement of the facts that Swift County Ditch 3 had deteriorated and that

[Swift] County Ditch 83, according to the engineer's report and plan, was to provide an *improved outlet* for each of the ditches originally outletting into [Swift] County Ditch 3.

(Emphasis added). Thus, the record indicates Swift County attempted a ditch proceeding involving aspects of both a single county ditch establishment and a multi-county outlet improvement, but followed only the single county ditch establishment petition procedure.

▆ Outlet improvement proceedings involving more than one county must be initiated with a joint ditch authority. Minn. Stat. § 106.511 (1984). While combination or hybrid actions are not statutorily prohibited, the logic of the two-track system requires that the prerequisites for both types of action be met. By proceeding only under the single county ditch establishment provisions, Swift County failed to meet the prerequisites necessary for a multi-county outlet proceeding. *Id.*[5]

▆ Swift County argues that its viewers were statutorily required to assess the lands in Pope and Stevens County under Minn.Stat. § 106.151 (1984). This statute requires viewers to "find and report the benefits accruing to all lands and properties affected and benefitted," and further provides:

If the proposed drainage system furnishes outlet to any existing county or judicial ditch and it appears that such outlet will benefit the existing ditch and the lands drained thereby, the viewers may determine and report the benefits from the proposed drainage system to each tract drained by the existing ditch, or, in a lump sum as outlet benefits to such existing ditch, as may appear just and equitable.

*Id.* For several reasons, we are not persuaded that this statute is a grant of power for viewers from one county to assess benefits in another county.

First, Swift County's argument circumvents the legislatively established two-track system for ditch proceedings. Despite the legislature's intent that the viewers for a project represent the areas being assessed, *see* Minn.Stat. § 106.141, subd. 1 (1984) (ditch authority "shall make an order appointing three disinterested resident free holders *of the county or counties affected* as viewers") (emphasis added), Swift County's argument would allow its viewers to assess lands in Pope and Stevens Counties. Second, because the viewer statute is applicable to both single county ditch and joint ditch proceedings, it is phrased broadly enough to cover both proceedings and assumes the prerequisites for its application have been met. Here, by proceeding only

5. Swift County argues that the idea of requiring simultaneous compliance with both ditch establishment and outlet improvement provisions was rejected in *In re Judicial Ditch No. 17,* 263 Minn. 547, 117 N.W.2d 392 (1962). That case is distinguishable. The issue there was

whether a new ditch may be established which takes over a branch of an older outlet ditch as a part of the new ditch and makes that branch wider and deeper without proceeding separately under § 106.511 to improve it.

*In re Judicial Ditch No. 17,* 263 Minn. at 549–50, 117 N.W.2d at 394. Unlike *In re Judicial Ditch No. 17,* the ditch in this case is *not* coincidental with the already existing ditch. Further, the petition to establish Judicial Ditch No. 17 was filed in district court following the then-existing provisions for multi-county ditch proceedings. Thus, the heart of the disagreement here, whether and to what extent a multi-county proceeding was necessary, was not present in that case.

under the single county ditch establishment provision, only those prerequisites have been satisfied. Third, under the viewer statute, direct assessment against benefitted property is only one of two assessment options. Benefits may be assessed alternatively "in a lump sum as outlet benefits to [an] existing ditch, as may appear just and equitable." Minn.Stat. § 106.151. Read in context, the direct assessment described is not a grant of authority of *what* may be assessed, but rather a description of a second method of *how* benefitted property may be assessed. Accordingly, we conclude that Minn.Stat. § 106.151 neither allows nor requires viewers to assess benefits against lands beyond the authority of the Board which appointed them.

## II.

◼ Finally, even if Minn.Stat. ch. 106 could be construed to provide authority for extra-county assessments, Swift County did not comply with the statutory provisions predicate to lien authority. Under Minn.Stat. § 106.161 (1984):

[i]f the [viewer's] report [is to] be filed with the joint drainage authority, a copy thereof shall also be filed with the auditor of *each county affected.*

(Emphasis added). In addition, before the final hearing on assessments:

The auditor or clerk shall cause notice of the time and place of such hearing to be given to *all persons interested* by publication, posting and mailing. A printed copy of the notice so made for *each county,* shall be posted * * * at the front door of the courthouse in *each county.*

Minn.Stat. § 106.171, subd. 3 (1984) (emphasis added). Swift County admits that the viewer's report was not filed with the county auditors of Stevens and Pope Counties and further admits that assessment hearing notice was not posted in Stevens or Pope Counties as required by statute. It is only "upon due publication, posting and mailing of the notice * * * [that] the Board shall have jurisdiction of all lands and properties described in the viewer's report." Minn.Stat. § 106.181; *see also* Minn.Stat.

§ 106.571, subd. 1 (1984) ("jurisdiction [in a ditch proceeding] shall continue as to all parties to whom proper notice has been given").

Because Swift County has not followed the relevant statutory procedures, we cannot say that a "clear record" of "clear authority" allowed Swift County to engage in extra-county assessments regarding Swift County Ditch 83. Accordingly, the Stevens and Pope County auditors were not clearly required to enter the resulting assessments, and the trial court's denial of the petition for writ of mandamus was not an abuse of discretion.

## DECISION

We hold that establishment of Swift County Ditch 83 by a single county ditch authority did not entitle the ditch authority to assess drainage outlet benefits against lands in Stevens and Pope Counties. We also hold that the trial court properly denied Swift County's petition for a writ of mandamus to direct Stevens and Pope County auditors to file the assessments where the ditch authority failed to follow the statutory requirements for filing and notice of assessments.

Affirmed.