**In re the Appeal from the Final Order of the BOARD OF MANAGERS OF the BOIS DE SIOUX WATERSHED DISTRICT.**

**Redetermining Benefits and Damages for Judicial Ditch No. 14.**

No. A11–1875.

Court of Appeals of Minnesota.

July 23, 2012.

Thomas C. Athens, Svingen, Cline & Larson, P.A., Fergus Falls, MN; and Gerald W. Van Korff, Rinke Noonan, St. Cloud, MN, for appellant Bois de Sioux Watershed District.

Jason G. Lina, Paul Brutlag, Fluegel, Anderson, McLaughlin & Brutlag, Chtd., Morris, MN, for respondents Grant and Otter Tail Counties.

Jeff C. Braegelmann, New Ulm, MN, for respondent Traverse County.

Considered and decided by CLEARY, Presiding Judge; STAUBER, Judge; and RODENBERG, Judge.

## OPINION

RODENBERG, Judge.

In this drainage dispute, appellant-watershed district argues that (1) the district court erroneously read Minn.Stat. § 103E.351 to require the drainage authority to make independent findings before appointing viewers under the statute and (2) instead of vacating the redetermination order, the district court should have remanded the matter to the drainage authority. Because the record is silent on whether appellant made the determination required by Minn.Stat. § 103E.351, subd. 1, and because the district court's decision did not address the merits and does not preclude further proceedings by the watershed district on this question, we affirm.

## FACTS

Appellant Bois de Sioux Watershed District is a watershed district organized pursuant to Minnesota Statutes chapter 103D. Appellant is governed by a board of managers and conducts its business through monthly meetings of the board. The actions of the board are made by motion and order and are documented by the minutes of the board meetings.

Judicial Ditch No. 14 was established by court order in 1950. The ditch was constructed by the Army Corps of Engineers and, after completion, transferred to the Boards of Commissioners of Traverse and Grant Counties in 1958. The counties subsequently transferred the ditch to the watershed district in 1991.

The watershed district's board has established a policy that any action by the district must be initiated by "written requests from assessed landowners, as they pay the expense and have an ownership interest."

At a staff meeting held on March 25, 2004, members of the watershed district's staff met with landowners in the assessment area for Judicial Ditch No. 14. At the meeting, the staff "indicated that the assessment area is relatively small compared to the size of the ditch system and it is very difficult to do much work in the way of maintenance because of the high costs and the small assessment area that is to bear those costs." Following a discussion after the staff's presentation, a majority of the landowners present stated that a redetermination of benefits and damages was in order.[1] The staff began to prepare

---

1. A redetermination of benefits and damages is a procedure by which "viewers" are ap-

a petition that a committee of landowners in the assessment area could circulate among all of the landowners in the assessment area.

At a board meeting held on August 18, 2005, the watershed district's staff reported that the petition was ready for circulation among the landowners, and the board consensus was to proceed with circulating the petition.

The text of the petition so circulated indicated that:

Petitioners respectfully represent as follows:

1. That they are the owners of at least 50.1% of the property area presently assessed for Judicial Ditch 14.

2. That the original benefits determined for Judicial Ditch 14 do not reasonably represent current land values and benefitted areas have changed.

NOW THEREFORE, it is respectfully requested that the Bois De Sioux Watershed District acting as the drainage authority for Judicial Ditch #14 order a redetermination of benefits pursuant to Minn.Stat. § 103E.351.

The administrator advised the board at its meeting on November 17, 2005, that a majority of landowners had signed the petition, and the board set the matter on for an informal meeting that December, to which all owners in the assessment area would be invited.

On December 15, 2005, the board held an informal meeting where it met with the landowners of the property that was part of the assessed area for Judicial Ditch No. 14. The minutes for the meeting recite that a

[b]rief history of the project was proposed. Attorney Athens discussed the

legal issues of this process, and explained that today was not a statutory hearing, but an informal one called because the size of the project was so large and the expense would be considerable. He also explained that the board did not need a petition to order a redetermination under the statute and it is still a discretionary decision on their part even though sixty-two percent (62%) of all land owner signatures were obtained.... Administrator stated mailed notice was given to all petitioners and many were in attendance. No one voiced any objection, nor reservations, to proceeding. Upon motion by [one board member], seconded by [another board member] and carried, the viewers were appointed and staff were authorized to proceed with the redetermination process.

The minutes do not contain any record of a motion, second, or vote of the managers with respect to the statutory basis upon which the redetermination process was commenced.

The viewers submitted their report to the board at its meeting held on December 17, 2009. A final hearing on the redetermination was initiated on April 15, 2010, and continued on June 17, 2010, August 19, 2010, and September 16, 2010. Appellant issued its findings of fact, conclusions, and order for redetermination of benefits on September 30, 2010.

Appeals from the redetermination order were brought in the district courts of Grant County, Otter Tail County, and Traverse County, and were consolidated into one proceeding. The appeals were brought by two groups of landowners below. One group comprised landowners in Grant County and Otter Tail County, and

pointed to survey lands for which the benefits conveyed and burdens imposed by a drainage ditch have been previously determined. *See*

*generally* Minn.Stat. § 103E.351 (authorizing proceedings to redetermine benefits and damages).

a second group comprised landowners in Traverse County.

Following consolidation, both groups of landowners moved separately for summary judgment. The district court granted the motions for summary judgment and vacated the redetermination order. The district court noted that a drainage authority may initiate the redetermination process if it

> determines that the original benefits or damages determined in a drainage proceeding do not reflect reasonable present day land values or that the benefited or damaged areas have changed, or if more than 50 percent of the owners of property benefited or damaged by a drainage system petition for correction of an error that was made at the time of the proceedings that established the drainage system.

Minn.Stat. § 103E.351, subd. 1.

The district court observed that the watershed district conceded that the petition circulated among the land owners in the assessed area did not satisfy the petition prong of Minn.Stat. § 103E.351, subd. 1.

The district court reasoned that "[a]ccordingly, the only way that the [watershed] District could effectively initiate the redetermination of benefits proceeding would be through a determination by the District." The district court held that the minutes of the watershed district's board of managers and the redetermination order failed to demonstrate that the district made any such determination.

■ Because the watershed district did not fulfill this statutory requirement, the district court held that the watershed district had not acquired jurisdiction[2] to proceed with a redetermination of benefits and damages, and vacated the redetermination order.

This appeal follows.

## ISSUES

I. Did the district court err in vacating appellant's redetermination order based on its holding that appellant failed to take the necessary steps to acquire jurisdiction to proceed with a redetermination of benefits and damages pursuant to Minn.Stat. § 103E.351, subd. 1?

II. Did the district court err by vacating the final order rather than remanding to appellant for further proceedings?

## ANALYSIS

### I.

■ This case involves questions of statutory construction and jurisdiction, which this court reviews de novo. *State v. Manypenny,* 682 N.W.2d 143, 149 (Minn. 2004).

■ A drainage authority does not retain perpetual jurisdiction to conduct drainage proceedings in its demesne but must instead follow the prescribed statutory procedures to establish jurisdiction over each individual proceeding. *Johnson,* 240

---

**2.** The district court referred to Minn.Stat. § 103E.351, subd. 1, as "in essence, a jurisdictional type statute setting forth requirements that must be followed to initiate a proceeding." Jurisdiction "is the power to hear and to determine a cause" and is generally understood as a concept circumscribing the judicial power to act. *Robinette v. Price,* 214 Minn. 521, 526, 8 N.W.2d 800, 804 (1943). This court has recently noted that the term "jurisdiction" is often used "imprecisely" and in reference to nonjurisdictional concepts and doctrines. *Moore v. Moore,* 734 N.W.2d 285, 287 n. 1 (Minn.App.2007), *review denied* (Minn. Sept. 18, 2007). Nevertheless, provisions like Minn.Stat. § 103E.351, subd. 1, have consistently been referred to as providing "jurisdictional prerequisite[s]." *Johnson v. Steele Cnty.,* 240 Minn. 154, 159, 60 N.W.2d 32, 36–37 (1953). To the extent that this is merely reasoning by analogy to judicial subject-matter jurisdiction, we find the analogy apt and see no reason to deviate from the practice in this case.

Minn. at 159–60, 60 N.W.2d at 37. In order to successfully establish jurisdiction over a drainage proceeding, the drainage authority must strictly comply with statutory procedures for commencing the proceeding. *Hagen v. Cnty. of Martin,* 253 Minn. 367, 370, 91 N.W.2d 657, 660 (1958) (stating that the validity of drainage proceedings depends upon "strict compliance with the provisions of the statute by which they are regulated and controlled").

Under the drainage statute, a drainage authority may initiate proceedings to redetermine benefits and damages in one of two ways. First, it may "determine[ ] that the original benefits or damages determined in a drainage proceeding do not reflect reasonable present day land values or that the benefited or damaged areas have changed." Minn.Stat. § 103E.351, subd. 1. Alternatively, it may initiate redetermination proceedings "if more than 50 percent of the owners of property benefited or damaged by a drainage system petition for correction of an error that was made at the time of the proceedings that established the drainage system." *Id.*

■ While the watershed district's efforts to ascertain the wishes of its constituents are admirable, appellant conceded at the summary judgment hearing and at oral argument on appeal that the petition drafted by its staff and circulated by a committee of landowners in the assessment area did not satisfy the petition prong of Minn. Stat. § 103E.351, subd. 1. Accordingly, the only basis upon which the redetermination proceedings could properly have been commenced would be a determination that *either* the "the original benefits or damages determined in a drainage proceeding do not reflect reasonable present day land values *or* that the benefited or damaged areas have changed." *Id.* (emphasis added).

■ The watershed district acts through its board of managers, whose ac-

tions are documented in the monthly minutes of the board. The minutes do not disclose that any motion was made or that any vote was taken to determine that the original benefits or damages did not reflect reasonable present-day land values or that the benefited or damaged areas had changed.

Regardless of what individual board members may have believed with respect to whether the conditions for a redetermination of benefits existed, the absence of collective action by the board itself meant that *the board* did not make the requisite determination. *Cf.* Minn.Stat. § 645.08(4) (2010) (stating that "words in a law conferring a joint authority upon three or more public officers or other persons are construed to confer authority upon a majority of such officers or persons"); *True v. Bd. of Cnty. Comm'rs,* 83 Minn. 293, 295, 86 N.W. 102, 103 (1901) (holding that independent actions of an individual member of a board of county commissioners could only be ratified "by some official action on the part of the board").

Because appellant's board did not take such collective action, appellant did not make the requisite determination, and appellant was therefore without jurisdiction to conduct the redetermination proceedings, which are void. *State ex rel. Spurck v. Civil Serv. Bd.,* 226 Minn. 253, 259, 32 N.W.2d 583, 586 (1948) (stating that "a determination of an administrative agency is void ... where it is made either without statutory power or in excess thereof"). Therefore, the district court did not err in vacating the order issued at the conclusion of those proceedings.

## II.

This court need not reach appellant's argument that the district court should have remanded for further proceedings because nothing precludes appellant from re-

commencing redetermination proceedings if it can first establish subject-matter jurisdiction. *Cf. Kulinski v. Medtronic Bio–Medicus, Inc.,* 577 N.W.2d 499, 502–04 (Minn.1998) (explaining that "[b]ecause a judgment entered ... without subject matter jurisdiction is void *ab initio,* a higher court cannot 'reverse' it, in the strictest sense of that word," and indicating that preclusive effect does not attach to decisions vacated for want of subject matter jurisdiction because there was no decision on the merits (citations omitted)). Respondent Traverse County landowners' motion to strike this argument is therefore denied as moot.

## DECISION

Because the watershed district's board did not take any collective action to determine that the original benefits or damages did not reflect reasonable present-day land values or that the benefited or damaged areas had changed, appellant was without jurisdiction to conduct the redetermination of benefits. Therefore, the district court did not err in vacating appellant's final order.

**Affirmed; motion denied.**