# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A16-0488

In re: the Appeal from the Final Order of the Board of Managers of the Bois de Sioux Watershed District Redetermining Benefits and Damages for J.D. No. 14 Dated 20th day of February, 2014
and
In re: the Appeal from the Final Order of the Board of Managers of the Bois de Sioux Watershed District Assessing Costs and Expenses of Redetermination Associated with the Redetermination of Benefits of J.D. No. 14 Dated the 27th day of March, 2014
and
In re the Appeal from the Final Order of the Board of Managers of the Bois de Sioux Watershed District Assessing Costs and Expenses of Redetermination Associated with the Redetermination of Benefits of J.D. No. 14 Dated the 18th day of December, 2014

**Filed December 19, 2016**
**Affirmed in part and reversed in part**
**Schellhas, Judge**

Traverse County District Court
File Nos. 78-CV-14-43, 78-CV-14-60, 78-CV-15-12

Daniel L. Lundquist, Ryan A. Gustafson, Frundt & Johnson, Ltd., Blue Earth, Minnesota (for appellants Anita Antrim and Kent Krenz)

Thomas C. Athens, Cline & Jenson, P.A., Fergus Falls, Minnesota (for respondent Bois de Sioux Watershed District)

Jeff C. Braegelmann, Gislason & Hunter LLP, New Ulm, Minnesota (for intervenors Haney, et al.)

Jason G. Lina, Fluegel, Anderson, McLaughlin & Brutlag, Chartered, Morris, Minnesota (for intervenors Ehlers, et al.)

Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Muehlberg, Judge.[*]

_____

[*] Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

I.    A drainage authority may not limit the scope of a redetermination of benefits and damages under Minnesota Statutes section 103E.351 (2014) to the drainage system's originally assessed area.

II.    Costs and expenses resulting from a redetermination of benefits and damages can be assessed against the drainage system's account under Minnesota Statutes section 103E.651, subdivision 2 (2014).

## OPINION

**SCHELLHAS**, Judge

Landowners appeal the summary-judgment dismissal of their claims challenging the Bois de Sioux Watershed District's redetermination of benefits and damages for Judicial Ditch No. 14 and assessment of redetermination costs and expenses against the drainage system. We affirm in part and reverse in part.

## FACTS

Judicial Ditch No. 14 (JD 14) is a public drainage system assessed as benefiting or damaging 29,479.6 acres of land within Grant and Traverse Counties. The drainage system was established by court order in 1950 and was constructed by the U.S. Army Corps of Engineers. The Bois de Sioux Watershed District assumed authority over JD 14 in 1991. The original benefits assessed for the drainage system totaled $489,099.67.

In 2005, the watershed district's board of managers concluded that a redetermination of benefits was appropriate in connection with potential repairs to JD 14 because the assessment area was small relative to the ditch system as a whole. The board of managers commenced a redetermination and appointed viewers under Minnesota Statutes section 103E.351. The viewers produced a report indicating that land values had

greatly increased since 1950 and that approximately 35,000 additional acres could be assessed benefits under Minnesota Statutes section 103E.315, subdivision 5 (2014). The viewers also found an additional 400,000 acres of land benefited from JD 14 under section 103E.315, subdivisions 6 and 7 (2014). The watershed district adopted the viewers' report and issued a final redetermination order on September 30, 2010. Following an appeal by two groups of landowners, the district court vacated the order. This court affirmed the vacation, holding that because the watershed district did not strictly comply with the requirements of section 103E.351, subdivision 1, the watershed district failed to acquire jurisdiction and its proceedings were void. *In re Bd. of Managers of Bois de Sioux Watershed Dist.*, 818 N.W.2d 583, 587 (Minn. App. 2012).

The watershed district's board of managers then spent several months considering its next course of action. On December 20, 2012, the board passed a resolution authorizing a second redetermination of benefits for JD 14 and appointed viewers. But the board was concerned about the cost of the redetermination and had doubts about the viewers' methodology in assessing benefits to 400,000 additional acres of land based on section 103E.315, subdivisions 6 and 7. So the board resolved that "the Drainage Authority advises the viewers appointed herein that the District only wishes to consider assessing lands within the original benefitted area."

The viewers performed their area-restricted investigation and found benefits to the originally assessed properties in excess of $33,000,000. On February 20, 2014, after several public hearings, the watershed district adopted the viewers' report and issued a final redetermination order. On March 27, 2014, the watershed district issued an order assessing

costs and expenses against JD 14 for the 2014 redetermination as well as the prior, failed redetermination effort. On December 18, 2014, the watershed district assessed an additional $60,000 in redetermination costs and expenses against JD 14.

Landowners within the originally assessed area appealed the watershed district's redetermination and costs orders to the district court. They argued that the watershed district failed to comply with section 103E.351 when it instructed the viewers to limit their investigation to the original assessment area. They also claimed that the redetermination costs could not be assessed solely against JD 14 and should instead be paid out of the watershed district's general fund. Two groups of persons owning land outside the originally assessed area intervened and opposed the appeals. All parties moved the district court for summary judgment. The court granted partial summary judgment to the watershed district and intervenors. The parties stipulated to the dismissal of the landowners' claims regarding the amount of the cost-and-expense assessments and agreed that $910,299.27 is the total amount of costs and expenses reflected in the watershed district's March 27, 2014 order. On January 27, 2016, the court ordered the entry of partial judgment under Minn. R. Civ. P. 54.02 and stayed the landowners' remaining challenges regarding the amount of benefits and damages assessed to individual parcels of property.

This appeal by the landowners follows.

## ISSUES

I.      Are the landowners' claims barred by the statute of limitations or laches?

II.     Did the watershed district have the authority to limit the redetermination of benefits and damages to the originally assessed area?

4

III. Should redetermination costs and expenses be assessed against JD 14 or the watershed district as a whole?

IV. If the watershed district's redetermination order is void, must its costs orders also be vacated because the redetermination costs exceed the total benefits originally assessed?

**ANALYSIS**

We review summary-judgment decisions to determine whether the district court properly applied the law and whether genuine issues of material fact exist. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010). When, like here, a district court grants summary judgment based on its application of statutory language to undisputed facts, its conclusion is a question of law that we review de novo. *Lefto v. Hoggsbreath Enters., Inc.*, 581 N.W.2d 855, 856 (Minn. 1998).

**I**

As a preliminary matter, we address the watershed district's arguments that the landowners' claims are barred by the statute of limitations and laches.

**A**

The watershed district argues that the landowners' claims are time-barred. The redetermination statute provides that persons "aggrieved by the redetermination of benefits and damages and benefited and damaged areas may appeal [to the district court] from the order confirming the benefits and damages and benefited and damaged areas under section 103E.091." Minn. Stat. § 103E.351, subd. 4. Appeals must be brought "within 30 days after the order to be appealed is filed." Minn. Stat. § 103E.091, subd. 2(b) (2014).

5

The watershed district appears to argue that its December 2012 resolution, which commenced the redetermination of benefits, was a final order appealable by the landowners to the district court within 30 days. But the only authority cited by the watershed district in support of its position is our decision regarding the prior redetermination attempt. *See Bois de Sioux Watershed Dist.*, 818 N.W.2d at 583. And nothing in that opinion suggests that a drainage authority's decision to initiate a redetermination is a "final order" under section 103E.351. Moreover, the redetermination statute provides that appeals are taken "from the order confirming the benefits and damages and benefited and damaged areas." Minn. Stat. § 103E.351, subd. 4. The watershed district's December 2012 resolution did not confirm any benefits or damages or any benefited or damaged areas; it instead ordered that the redetermination would commence. The watershed district's February 20, 2014 order, which *did* confirm and adopt the viewers' report, sets the relevant date for calculating the time for appeal.

The watershed district argues that this court should apply Minnesota Statutes section 103E.095 (2014) when considering the timeliness of the appeals, instead of section 103E.091 (2014). The watershed district's position contradicts the plain language of the redetermination statute, which states that redetermination appeals are taken "under section 103E.091." Minn. Stat. § 103E.351, subd. 4. Furthermore, by its terms, section 103E.095 applies to appeals from orders dismissing drainage proceedings or establishing or refusing to establish a drainage project. Minn. Stat. § 103E.095, subd. 1. A redetermination of benefits is neither a drainage proceeding nor a drainage project. *See* Minn. Stat. §§ 103E.005, subds. 22 (defining "proceeding" as "a procedure under this chapter for or

6

related to drainage that begins with filing a petition and ends by dismissal or establishment of a drainage project"), 11 (2014) (defining "drainage project" as "a new drainage system, an improvement of a drainage system, an improvement of an outlet, or a lateral"). Regardless, like section 103E.091, section 103E.095 provides a 30-day time limit for appeals to the district court. Minn. Stat. § 103E.095, subd. 1. Because the landowners appealed each final order within 30 days, their claims are not time-barred.

B

The watershed district argues that the landowners' claims are barred by laches. "Laches is an equitable doctrine applied to prevent one who has not been diligent in asserting a known right from recovering at the expense of one who has been prejudiced by the delay." *Martin v. Dicklich*, 823 N.W.2d 336, 340 (Minn. 2012) (quotation omitted). The supreme court has held that when an action is governed by a statute of limitations, the laches doctrine does not apply. *M.A.D. v. P.R.*, 277 N.W.2d 27, 29 (Minn. 1979); *Aronovitch v. Levy*, 238 Minn. 237, 241, 56 N.W.2d 570, 574 (1953). An exception exists in equitable actions when a party can show that delay would result in substantial injury to innocent parties. *Aronovitch*, 238 Minn. at 241, 56 N.W.2d at 574.

The landowners appeared at the final hearing for the redetermination and objected to the watershed district's restriction of the assessment of benefits to the originally assessed area and then timely appealed the watershed district's redetermination and costs orders to the district court. Because the landowners diligently asserted their rights, their claims are not barred by laches.

## II

The landowners argue that the watershed district failed to comply with the plain language of Minnesota Statutes section 103E.351 when conducting the redetermination of benefits.  The interpretation of a statute is a question of law that appellate courts review de novo. *Swenson v. Nickaboine*, 793 N.W.2d 738, 741 (Minn. 2011). The object of statutory interpretation is to ascertain and effectuate the legislature's intent. Minn. Stat. § 645.16 (2014). When possible, a statute must be construed to give effect to all of its provisions. *Id.* Drainage proceedings "are purely statutory and their validity depends upon a strict compliance with the provisions of the statute by which they are regulated and controlled." *Hagen v. Martin County*, 253 Minn. 367, 370, 91 N.W.2d 657, 660 (1958).

Drainage authorities have the discretion to commence a redetermination of benefits when a statutory prerequisite exists:

> If the drainage authority determines that the original benefits or damages determined in a drainage proceeding do not reflect reasonable present day land values or that the benefited or damaged areas have changed, or if more than 50 percent of the owners of property benefited or damaged by a drainage system petition for correction of an error that was made at the time of the proceedings that established the drainage system, the drainage authority may appoint three viewers to redetermine and report the benefits and damages and the benefited and damaged areas.

Minn. Stat. § 103E.351, subd. 1. The watershed district commenced a redetermination based on its conclusion that the original benefits or damages for JD 14 no longer reflect present-day land values. The issue is whether the watershed district had authority to restrict the redetermination to the originally assessed area. Under the plain language of the

8

drainage laws, we hold that the watershed district did not have the authority to restrict the redetermination to the originally assessed area.

The redetermination statute unambiguously states that once a drainage authority concludes that a redetermination prerequisite exists, it "may appoint three viewers to redetermine and report the benefits and damages *and* the benefited and damaged areas." *Id.* (emphasis added). Accordingly, a drainage authority may order a redetermination either because the original benefits or damages do not reasonably reflect current land values *or* because the benefited or damaged areas have changed. *Bois de Sioux Watershed Dist.*, 818 N.W.2d at 587. But once a redetermination is commenced, the statute instructs the drainage authority to redetermine not only the benefits and damages but *also* the benefited and damaged areas. Minn. Stat. § 103E.351, subd. 1.

The watershed district and intervenors argue that the use of the word "and" in section 103E.351 should be read disjunctively and therefore is not dispositive in this situation. They assert that reading "and" as "or" is appropriate here because of ambiguity caused by the word "may" in section 103E.351, subdivision 1. Minnesota caselaw provides that "the word *and* may be construed as a disjunctive where the sense of the statute plainly requires it." *Maytag Co. v. Comm'r of Taxation*, 218 Minn. 460, 463, 17 N.W.2d 37, 39 (1944). But, here, the statute does not require such a reading because it makes sense as written. The word "may" refers to the drainage authority's discretion to commence a redetermination of benefits after it concludes that a statutory prerequisite is satisfied. If the drainage authority chooses to proceed with the redetermination, the appointed viewers

9

must then report both "the benefits and damages *and* the benefited and damaged areas." Minn. Stat. § 103E.351, subd. 1 (emphasis added).

As proposed by the watershed district and intervenors, the "or" substitution also overlooks the fact that the "benefits and damages and the benefited and damaged areas" phrase is repeated five more times in section 103E.351 with respect to the procedures for the final redetermination hearing, the effect of the redetermination of benefits, and the right of aggrieved persons to appeal. *Id.*, subds. 2(c) ("The drainage authority shall hold a final hearing on the report and confirm the benefits and damages and benefited and damaged areas."), 3 ("The redetermined benefits and damages and benefited and damaged areas must be used in place of the original benefits and damages and benefited and damaged areas in all subsequent proceedings relating to the drainage system."), 4 ("A person aggrieved by the redetermination of benefits and damages and benefited and damaged areas may appeal from the order confirming the benefits and damages and benefited and damaged areas under section 103E.091."). Accepting the watershed district's construction therefore would require six alterations to the statute's text, but we may not "rewrite a statute under the guise of statutory interpretation." *Laase v. 2007 Chevrolet Tahoe*, 776 N.W.2d 431, 438 (Minn. 2009).

Our conclusion that the watershed district lacked the authority to limit the redetermination of benefits is supported further by the statutory provisions detailing the viewers' duties. Section 103E.351 states that the redetermination "shall proceed as provided for viewers and the viewers' report in sections 103E.311 to 103E.21." Minn. Stat. § 103E.351, subd. 2(a). With respect to a proposed drainage project, viewers are required

10

statutorily to "determine the benefits and damages to *all property affected* by the proposed drainage project and make a viewers' report." Minn. Stat. § 103E.311 (2014) (emphasis added); *see also* Minn. Stat. § 103E.005, subd. 2 (2014) (defining "affected" to mean "benefited or damaged by a drainage system or project"). Furthermore, when assessing the extent of the benefits, the viewers must "determine the amount of benefits to *all property within the watershed*, whether the property is benefited immediately by the construction of the proposed drainage project or the proposed drainage project can become an outlet for drainage, makes an outlet more accessible, or otherwise directly benefits the property." Minn. Stat. § 103E.315, subd. 5 (emphasis added). The watershed district's argument that sections 103E.311 and 103E.315 "do not neatly fit a redetermination" is not convincing. Although the watershed district is correct that these sections refer to "drainage projects," and a redetermination of benefits is not a drainage project, *see* Minn. Stat. § 103E.005, subd. 11, these sections nevertheless are specifically referenced by the redetermination statute, Minn. Stat. § 103E.351, subd. 2(a). Because the statutory language requiring the viewers to assess benefits to "all property within the watershed" can be given effect, we must not ignore the language. *See* Minn. Stat. § 645.16 ("When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.").

We also are unconvinced by the watershed district's argument that "no real difference" exists between the drainage laws' redetermination provisions and their repair provisions. *See* Minn. Stat. § 103E.741 (2014). The repair provisions require the drainage authority to appoint viewers before awarding a repair contract "if the drainage authority

11

determines that property not assessed for benefits for the construction of the drainage system has been benefited by the drainage system." Minn. Stat. § 103E.741, subd. 2. The watershed district argues that under this section "the drainage authority determines what lands should be viewed before appointing viewers, and thus controls what lands are to be viewed." But that conclusion is not supported by the statutory text, which instead provides that "[t]he viewers shall determine the benefits to all property and entities benefited by the original construction of the drainage system and not assessed for benefits arising from its construction." *Id.* If anything, section 103E.741 therefore suggests that a drainage authority may *not* limit a redetermination of benefits to the originally assessed area.

The watershed district also suggests that it necessarily has the authority to restrict the redetermination because it has the power to amend the viewers' report and make its own findings. Minn. Stat. § 103E.335, subd. 2 (2014). But this power is limited to circumstances in which the drainage authority determines that "the viewers have made an inequitable assessment of benefits or damages to any property." *Id.* The watershed district was concerned about the costs associated with a watershed-wide redetermination of benefits, not an inequitable assessment of benefits to certain properties.

Finally, the watershed district's and intervenors' reliance on *County of Swift v. Boyle* is misguided. 481 N.W.2d 74 (Minn. App. 1992), *review denied* (Minn. Mar. 26, 1992). In *Boyle*, this court held that a single-county drainage authority conducting a drainage improvement could not assess benefits and damages to land in nearby counties. *Id.* at 78–79. Here, the lands outside the originally benefited area that the landowners claim must be assessed are still within the watershed district. Having the viewers report the benefits to

12

those lands therefore would not require them "to assess benefits against lands beyond the authority of the Board which appointed them." *Id.* at 79. Because a watershed-wide redetermination of benefits would not exceed the watershed district's authority, *Boyle* is inapposite.

In sum, the watershed district improperly commanded the viewers to ignore their statutory duties when it instructed them to restrict their review to the originally assessed area. While we appreciate the watershed district's concern about potential costs and legal challenges if additional properties were assessed benefits, the watershed district was required to follow section 103E.351 as written. Section 103E.351 does not give the watershed district the authority to limit the scope of the redetermination to those lands already assessed benefits. The statutory scheme instead demonstrates that the legislature intended that benefits and damages should be equitably apportioned to lands affected by a drainage system. *See In re Improvement of Murray Cty. Ditch No. 34*, 615 N.W.2d 40, 45 (Minn. 2000) (noting that the drainage laws "are a complex matrix adopted with the intent of reclaiming agricultural land by disposing excess water that renders the land untillable *and fairly allocating the costs among benefited landowners*" (emphasis added) (citation omitted)). Because the watershed district did not strictly comply with section 103E.351, the redetermination is void. *See Quam v. State*, 391 N.W.2d 803, 809 (Minn. 1986) (stating that the "determination of an administrative agency is void and subject to collateral attack where it is made either without statutory power or in excess thereof" (quotation omitted)).

**III**

The landowners argue that the watershed district's March 27, 2014 order assessing costs and expenses must be vacated because no statutory authority exists that allows redetermination costs to be assessed against JD 14. Section 103E.351 does not indicate who pays redetermination costs. But the drainage laws require the watershed district to "provide funds to pay the costs of drainage projects and systems." Minn. Stat. § 103E.651, subd. 1 (2014). And the county auditor must keep separate accounts for each drainage system, which "must be debited with every item of expense made for the drainage system." *Id.*, subd. 2. Because the redetermination of benefits was performed for JD 14, the costs can be assessed against its account. *See id.*

The landowners maintain that the costs cannot be assessed against JD 14 because Minnesota Statutes section 103E.655 (2014) does not reference redetermination costs. That section provides that "[t]he costs for a drainage project proceeding and construction must be paid from the drainage system account by drawing on the account." Minn. Stat. § 103E.655, subd. 1. While the landowners are correct that a redetermination of benefits is not a drainage project or a proceeding, *see* Minn. Stat. § 103E.005, subds. 11, 22, nothing in section 103E.655 suggests that it is a definitional statute intended to limit *which* costs may be assessed against a drainage system. Rather, section 103E.655 focuses on *how* costs for drainage projects are paid. *See* Minn. Stat. §§ 103E.655, subds. 2 (allowing a drainage authority to transfer funds from other drainage system accounts or the county general revenue fund in the event of insufficient funds), 3 (requiring interest to be paid from available funds when a warrant is issued on an account with insufficient funds).

14

Another flaw in the landowners' position is the lack of clarity about who pays for the redetermination if the costs cannot be paid from JD 14's account. The landowners argued to the district court that the costs should be paid from the watershed district's general fund, but we are uncertain about whether they are renewing that argument on appeal. In any event, the argument is not supported by the drainage laws, which provide that the money in a watershed district's general fund "shall be used for general administrative expenses and for the construction or implementation and maintenance of projects of common benefit to the watershed district." Minn. Stat. § 103D.905, subd. 3 (2014). A redetermination is not included in the statutory definition of "project." *See* Minn. Stat. § 103D.011, subd. 21 (2014) (defining "project" as "planning and development, construction, maintenance, repair, or improvement of a watershed district for a purpose for which the watershed district is established"). Nor does the record reflect that the redetermination of JD 14 was commenced to provide a benefit to the watershed district as a whole. Rather, the watershed district's redetermination order indicates that the proceedings were prompted by concerns about the ability to pay for repairs to JD 14. The redetermination costs therefore may not be paid from the watershed district's general fund.

We also are unconvinced by the landowners' argument that the drainage system cannot be charged for costs associated with the earlier, failed redetermination of benefits. The landowners appear to argue that the costs of the failed redetermination cannot be assessed against JD 14's account because this court found the redetermination void for lack of jurisdiction. While the watershed district acted without jurisdiction and therefore could not bind landowners to the result of the redetermination, *see Bois de Sioux Watershed Dist.*,

15

818 N.W.2d at 587, costs nevertheless were incurred in the failed redetermination. Again, the landowners do not explain how these costs will be paid if they cannot be assessed against the drainage system's account. Because the failed redetermination was intended to benefit JD 14 specifically, the costs can be charged to its account under section 103E.651, subdivision 2, even though the redetermination of benefits was ultimately declared to be void.

## IV

The landowners argue that if the watershed district's redetermination order is void, its March 27, 2014 costs-and-expenses order must also be vacated because the total redetermination costs ($910,299.27) exceed the benefits originally assessed to JD 14 ($489,099.67). In support of their position, the landowners cite Minnesota Statutes sections 103D.901 (2014) and 103E.341 (2014). But neither of these sections applies to redetermination costs assessed against a drainage system.

Section 103D.901, subdivision 4, provides that "[a]n assessment may not be levied against property or corporations benefited under [chapter 103D] in excess of the amount of benefits received as set by the order of the managers authorizing the construction or implementation of the project or subsequently determined on appeal." As already noted, a redetermination of benefits is not a "project" under chapter 103D. *See* Minn. Stat. § 103D.011, subd. 21. Similarly, section 103E.341, subdivision 1(1), requires the drainage authority to dismiss a drainage project proceeding and petition if it determines that "the benefits of the proposed drainage project are less than the total cost, including damages

16

awarded." And a redetermination of benefits is not a "drainage project." *See* Minn. Stat. § 103E.005, subd. 11.

## DECISION

Because the watershed district lacked the authority to restrict the redetermination of benefits and damages to the originally assessed area, the redetermination is void. But the watershed district did have the authority to assess redetermination costs against JD 14's account under Minnesota Statutes section 103E.651, subdivision 2.

**Affirmed in part and reversed in part.**